585 A.2d 573

**William BAUS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (NELSON COMPANY and Bituminous Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 1990.

Decided Jan. 4, 1991.

Correction of Record and Reargument Denied Feb. 28, 1991.

122

Robert J. Murphy, Murphy, Murphy & Murphy, P.C., Philadelphia, for petitioner.

William J. McKee, with him, John C. Jackson, LaBrum and Doak, Philadelphia, for respondents.

Before CRAIG, President Judge, PELLEGRINI, J., and CRUMLISH, Jr., Senior Judge.

CRAIG, President Judge.

Claimant William Baus appeals a decision of the Workmen's Compensation Appeal Board that affirmed two decisions of a referee. One of the referee's decisions concerned the subrogation rights of the Nelson Company, the claimant's employer, to an apportionment of a third-party settlement the claimant obtained; the other decision dismissed the claimant's petition to impose penalties on the employer.

In addition to the matter of penalties, this appeal involves the computation of the employer's subrogation rights in the third-party settlement.

In 1977 the employer began to pay workmen's compensation benefits to the claimant for an injury he sustained to his left foot in the course of his employment, at the rate of $199.00 per week. The claimant later brought a negligence suit against a third party, the manufacturer of the hoist that injured his foot. The claimant settled that third-party suit for $75,000.00. The claimant received $38,792.00 of the $75,000.00, which reflected a deduction of $36,208.00 for attorney's fees and costs incurred in litigating the third-party suit. The employer filed a petition with the Bureau of Workers' Compensation seeking to suspend or terminate benefits and requesting a supersedeas, based on the employer's subrogation rights.

The total amount of past compensation which the employer had paid, up to that point, was $34,498.00.

In summary, the key dollar amounts in this case are:

| | |
|---|---|
| Weekly compensation amount (w) | $199.00 |
| Past compensation lien (P) | $34,498.00 |
| Gross third-party recovery (R) | $75,000.00 |
| Total costs of that recovery (c) | $36,208.00 |
| Net recovery (R-c) | $38,792.00 |

On October 3, 1980, the referee entered a supersedeas order suspending the claimant's benefits. The referee issued a decision on July 15, 1981, in which he determined that the employer was entitled to recover its accrued lien for past compensation payments and medical costs, and to receive a future credit for compensation payable.

The claimant appealed that decision to the board; however, because the record did not contain the notes of testimony and documents that the parties had submitted at the referee's hearing, the board remanded the matter to the referee for the limited purpose of completing the record.

After development of a record, the board, on August 26, 1986, issued another decision, which vacated a decision of the referee granting future compensation credit to the

employer, and remanded the case again. Because the board concluded that the employer, in its petition to suspend or terminate benefits, had agreed to forego reimbursement of its past accrued lien in favor of a credit for future payments, the board directed the referee to recalculate the employer's entitlement to a future credit for compensation payable. The board also instructed the referee to open the record for admission of evidence concerning the costs the claimant incurred in obtaining the settlement and to make specific findings of fact relating to the determination of future credit.

On December 9, 1986, the claimant filed a petition for penalties against the employer.

On February 27, 1987, the referee finally determined that the employer, having waived recovery as to the lien for past compensation paid, should have the benefit of the claimant's net settlement recovery as a future credit for compensation payable for a period of 194.94 weeks, from the operative date of the October 3, 1980 supersedeas, November 3, 1980, through August 1, 1984. The referee ordered the employer to reinstate compensation after the expiration of the credit period.

The referee denied the claimant's request for penalties on May 11, 1987.

The claimant appealed both decisions to the board, which denied his appeals on May 11, 1990.

The claimant raises the following issues in his appeal to this court:

(1) Whether the state constitution precludes referees and the board from exercising jurisdiction over controversies involving subrogation claims;

(2) Whether the employer's waiver of the accrued lien for past compensation was, in effect, a settlement of the past lien aspect of subrogation ($34,498.00) for a zero amount, entitling the claimant to deduct the entire $34,498.00 past lien amount from the *net* recovery of $38,792.00, leaving only $4,294.00 to be applied as a credit toward future

weeks of compensation, i.e., 21.57 weeks ($4,294.00/$199.-00);

(3) Whether that future credit of $4,294.00 should also be subject to a further deduction in the proportion of that credit to the gross recovery ($4,294.00/$75,000.00), about 5% of costs, so that $1,810.00 (5% of $36,208.00 costs) should be paid by the employer to the claimant over the 21.57 weeks of future compensation credit;

(4) Whether the referee erred in denying the claimant's petition for penalties; and

(5) Whether the board erred in remanding the matter to the referee.

### 1. The constitutional issue

The claimant argues that the state constitution precludes the referee from granting subrogation rights to an employer, because only the courts of common pleas have jurisdiction over equitable remedies such as subrogation.

■ The constitutional provision upon which the claimant relies, Article III, section 18, vests the state legislature with power to enact laws relating to worker's compensation. That provision states in pertinent part:

The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of *reasonable compensation* for injuries to employes arising in the course of their employment.... and *fixing the basis of ascertainment of such compensation* and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof.... (Emphasis added.)

That language, which indicates that the legislature may enact laws that fix reasonable compensation to be paid "by employers, or employers and employes jointly ... and fixing the basis of ascertainment of such compensation ... and providing special or general remedies for the collection" of reasonable compensation, provides a sufficiently broad delegation of power to vest the General Assembly with the

authority to enact the subrogation provision in question, section 319 of The Pennsylvania Workmen's Compensation Law (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

In essence, subrogation, although an equitable remedy, relates, with respect to the workmen's compensation laws, specifically to the ultimate ascertainment of reasonable compensation an employer is obligated to pay an employee who is injured in the course of employment. When there is a damages recovery from a third-party tort feasor, legislation which gives a compensation-paying employer appropriate credit, against that recovery, indeed does (1) contribute to the reasonableness of the compensation obligation, and (2) specifically affect "fixing the basis of ascertainment of such compensation." Thus, the statutory provision for subrogation is not contrary to the state constitution, but implements it and is therefore constitutionally valid.

## 2. Deduction of past lien amount from net recovery before calculating future credit weeks

The record does not support the claimant's contention that the employer settled the past lien amount of $34,498.00 for zero, so as to give that amount to the claimant free and clear before calculation of the future credit.

■ Of course, by proper agreement, an employer can settle its claim for a past lien for a lesser amount out of the recovery, and the claimant in such a case is entitled to the benefit of that bargain. In *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.),* 126 Pa.Commonwealth Ct. 206, 559 A.2d 92 (1989), the employer agreed to settle its $120,203.00 past lien for $32,186.67, free of any obligation for costs, and we there held that the claimant should have the benefit of the bargain by deducting the entire $120,203.00 before calculating future credit.

■ But the record here contains no such settlement or agreement. The employer agreed to "waive" subrogation recovery as to the past lien of $34,498.00, in order to apply

the third-party recovery entirely to future compensation credit. In accepting that "waiver", the claimant obtained no commitment or indication that the employer was agreeing to let the claimant receive the past compensation twice, that is, by getting $34,498.00 in weekly compensation previously and then by receiving another $34,498.00 free and clear from the third-party recovery.

Settlements of past liens normally are proposed to induce a claimant to accept a third-party settlement proposal. No such inducement aspect was involved here.

The facts in *Warner Lambert Company v. Pennsylvania Workmen's Compensation Appeal Board (Brown)*, 133 Pa.Commonwealth Ct. 250, 575 A.2d 956 (1990), are similar to the facts in this case in that the claimant in *Warner Lambert* did not reimburse the insurer as to any of the back compensation the insurer had paid the claimant. The court noted that, under those circumstances, an insurer, or employer, as in this case, is entitled to apply subrogation rights entirely to the grace period as to future compensation. (In *Warner Lambert*, the parties based future credit upon the gross recovery with a weekly payback of proportionate legal costs rather than upon net recovery after deduction of costs, as was done in this present case.)

Accordingly, we cannot accept the claimant's future credit calculation, which was

| | |
|---|---|
| Gross recovery (R) | $75,000.00 |
| Less costs (c) | $36,208.00 |
| Net recovery | $38,792.00 |
| Less past lien (P) | $34,498.00 |
| | $ 4,294.00 |
| Divided by weekly amount (w) | $199.00 |
| Grace period (G)    = | 21.57 weeks |

The referee and the board were correct in simply applying the entire net recovery of $38,792.00 to future credit weeks as follows:

| | |
|---|---|
| | $38,792.00 (net recovery) |
| divided by | $199.00 (weekly compensation) |
| G= | 194.9 weeks |

### 3. Deduction of costs for net recovery

In *Dasconio* this court indicated that "whenever the grace period as to future compensation is computed on the basis of a *net* figure, with legal expenses subtracted, rather than a gross figure, the employer receives a shorter grace period but correspondingly has no obligation to reimburse legal expenses attributable to the third-party recovery amount which makes the grace period possible." 126 Pa. Commonwealth Ct. at 225, 559 A.2d at 102 (emphasis in original). *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas)*, 506 Pa. 592, 487 A.2d 794 (1985) provides another example of a grace period based upon a net recovery.

Claimant's attempt to subject the *net* recovery (as to future credit weeks) to a further deduction, by requiring the employer to pay claimant a weekly amount for costs, proportionately attributable to the future credit amount, is a bald attempt to recover at least part of those costs twice.

In *Dasconio* we pointed out that future credit *may* be calculated upon net recovery after deduction of costs, as we did there, because no party preserved any claim for the gross recovery-less-weekly-cost-reimbursement approach.

Here the claimant also has not preserved any claim seeking to apply the gross recovery approach, which, at $199.00 per week, would have produced a grace period of 376.9 weeks ($75,000.00/$199.00), with a weekly cost reimbursement of $96.07 by the employer to pay back the $36,208.00 costs.

The claimant, while assuming a future grace period based upon net recovery (*after* deduction of legal costs), here inconsistently seeks a weekly cost reimbursement of $79.60 in addition, by unjustified reliance upon a letter from opposing counsel. However, that letter is irrelevant in view of the *net* recovery approach taken here, because that letter refers to such reimbursement in the context of applying *gross* recovery for the grace period, as evinced by its

rejection, at that juncture, of a credit based on net proceeds.[1]

When the referee thereafter awarded future credit based on net recovery, without any objection by claimant to that general approach, the letter became irrelevant.

Hence, the referee correctly calculated the future credit amount and grace period, subjecting the employer to bear legal costs by using the net figure.

### 4. Penalties

The claimant argues that the referee erred in not granting penalties because (1) the supersedeas the referee granted in 1980 was invalid in that the referee entered the supersedeas without providing notice or a hearing; and (2) the supersedeas merged into the referee's first decision in 1981. Hence the board's remand of that decision rendered the supersedeas ineffective. The claimant also argues that, even if the supersedeas continued in effect throughout the course of these proceedings, he is entitled to penalties because, assuming that the referee's calculations are correct, the employer acted in bad faith by not reinstating compensation payments after the end of the grace period, August 1, 1984.

█ The employer included its request for a supersedeas in its termination petition. The supersedeas order indicates that a hearing on the petition was held on October 3, 1980, and that counsel for the claimant was present. Furthermore, the claimant never challenged the validity of the

1. The letter, which was addressed to claimant's counsel, stated in pertinent part that

You are correct when you state that my advice to the Board was that we waived our right to recovery of the lien which existed at the date of your third party settlement and that we recognize our obligation to pay a weekly workers' compensation benefit for each week we take a credit until the third party settlement fund is exhausted. My advice to the Board was that we would be willing to pay $79.60 for each week we took a credit. However, *your letter is incorrect when you state that we are seeking a credit based on the net proceeds* of the third party settlement which you effected for your client in February of 1980. (Emphasis added.)

supersedeas during the period it was in effect. Therefore, the employer did not act improperly in not paying compensation during the period the supersedeas was in effect.

The claimant also argues that the supersedeas merged into the referee's 1981 decision on the merits, and that the employer was required to seek reinstatement of the supersedeas after the board remanded the referee's decision.

■ The claimant relies on *Bureau of Workers' Compensation v. Workmen's Compensation Appeal Board (Allstate)*, 96 Pa.Commonwealth Ct. 566, 508 A.2d 388 (1986), *petition for allowance of appeal denied*, 514 Pa. 632, 522 A.2d 560 (1987), in making that argument. We note that the court in that case stated that when the board vacates a referee's decision and remands the case for additional findings, the result is that the notice of compensation payable is reinstated. However, the court went on to add that a party which already has obtained a supersedeas is not under a duty to obtain a second supersedeas following a remand, where the action does not constitute a new proceeding.

■ Finally, although the referee ultimately determined that the employer's grace period expired on August 1, 1984, the proceedings relating to the calculation of the grace period did not end until the referee's 1987 decision. Hence, although in retrospect, the employer's grace period expired approximately two-and-one-half years before the referee's decision, the supersedeas, which remained in effect throughout that period, relieved the employer of the obligation to reinstate the claimant's benefits at an earlier time.

Because the supersedeas was valid and remained in effect, and because the referee found that the employer acted in good faith throughout the proceedings, we conclude that the referee did not abuse his discretion in denying penalties to the claimant.

### 5. Remand to the Referee

The claimant also asserts that the board erred in remanding the matter to the referee for findings on apportionment.

However, as the employer notes, the reason the board remanded the matter was not because the employer failed in its burden to establish that the claimant had obtained a settlement, but rather for the claimant to provide evidence of the cost of the litigation that produced the settlement, so that the referee could calculate the amount of the employer's future credit.

Accordingly, the decision of the board is affirmed.

## ORDER

Now, January 4, 1991, the decision of the Workmen's Compensation Appeal Board, dated May 11, 1990, at Nos. A–93585 and A–93168, are affirmed.