**SKF USA, INC., Petitioner,**

v.

## WORKERS' COMPENSATION APPEAL BOARD (SMALLS), Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 1998.

Decided June 23, 1998.

Reargument and/or Reconsideration Denied Aug. 24, 1998.

Jonathan F. Ball, Philadelphia, for petitioner.

Michael W. McGurrin, Philadelphia, for respondent.

Before COLINS, President Judge, LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

SKF USA, Inc. (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) which reversed the decision of the workers' compensation judge (WCJ) granting Employer's petition filed under Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, seeking credit for future workers' compensation benefits payable to Thomas Smalls (Claimant) against his third-party settlement recovery. The issue on appeal is whether a corporate general release, in which Employer released its right to subrogation under Section 319 of the Act, is valid and enforceable under the Act and the general principles of contract law.

The relevant facts are undisputed. On April 22, 1980, Claimant suffered work-related injuries to his hand, including amputation of two fingers, and received total and partial disability benefits for various periods, pursuant to a notice of compensation payable and supplemental agreements. Shortly after the work injuries, Claimant commenced a third-party action against Norton Industries, the manufacturer of the machine which caused his injuries. Subsequently in May 1985, Claimant and Norton Industries entered into a settlement agreement, in which Norton Industries agreed to make an immediate lump sum payment of $430,000 to Claimant and $20,000 to his wife and make further periodic payments in certain amounts.

After the settlement of the third-party action, Claimant and Employer engaged in negotiations, through their counsel, as to the extent of Employer's subrogation interests.

In a letter dated September 18, 1985, Employer's counsel indicated that Employer had an accrued subrogation lien in the amount of $98,014.81 for benefits paid to Claimant and that Employer was willing to pay 1/3 of attorney's fees and $2000 litigation costs incurred by Claimant in the third-party action. Employer's counsel also stated that it was necessary for the parties to arrive at some arrangement regarding any future benefits payable to Claimant for the work injuries. Employer's counsel suggested:

Perhaps the best solution would be for you to prepare papers indicating that Tommy [Claimant] agrees to forego any future Workers' Compensation payments from SKF due to the amputation of his two fingers. I expect that you are preparing the proper release forms concerning this and the reimbursement of SKF's lien.

In a reply letter dated on January 28, 1986, Claimant's counsel questioned whether Employer would prevail in Claimant's challenge to Employer's subrogation right, in light of Employer's removal of the safety guard installed on the machine which caused Claimant's injuries. Claimant's counsel stated that Claimant was willing to pay Employer $63,343.21, representing 2/3 of the amount of the accrued subrogation lien reduced by $2000 litigation costs that Employer was willing to pay.

Three days later on January 31, 1986, Employer executed a corporate general release (Release), which provided in relevant part:

[T]he undersigned on behalf of SKF INDUSTRIES, INC. for and in consideration of $63,343.21, receipt of which is hereby acknowledged[,] do hereby remise, release, and forever discharge THOMAS SMALLS, ... of and from any and all manners of actions and causes of action, suits ... claims and demands whatsoever in law or equity, especially any and all past, present or future claims which SKF INDUSTRIES, INC. may have against THOMAS SMALLS pursuant to Section 319 of the Pennsylvania Workers' Compensation Act for Workers' Compensation benefits paid or to be paid to THOMAS SMALLS due to Mr. SMALLS' accident of April 22, 1980.

Subsequently, Claimant again experienced periods of total and partial disability related to the work injuries. On March 12, 1987, Employer filed a petition, seeking credit for future benefits payable subsequent to the execution of the Release against Claimant's third-party settlement recovery. In the petition, later amended, Employer alleged that the Release has no binding effect under the Act, and that it is also void or voidable because it lacked consideration and was executed under duress and by a mistake of law or fact.

After hearings, the WCJ concluded that the Release is valid under the Act; Employer failed to prove that it executed the Release under duress, or by a mistake of law or fact; and Employer waived its statutory right to credit for future benefits against Claimant's third-party settlement recovery. The WCJ accordingly denied Employer's petition and ordered Employer to pay Claimant benefits paid or payable subsequent to the execution of the Release. On appeal, the Board remanded the matter to the WCJ for further consideration, stating that the WCJ failed to decide all the issues raised by Employer, including the issue of lack of consideration for Employer's release of its subrogation right.

On remand, a newly assigned WCJ again concluded that Employer failed to establish that the Release was executed under duress, or by a mistake of law or fact. The WCJ further concluded, however, that the Release lacked consideration because as a matter of law, Employer had the right to subrogation under Section 319 of the Act. The WCJ therefore granted Employer's petition and awarded Employer credit for benefits paid and payable after January 31, 1986. On appeal, the Board reversed the WCJ's decision. The Board concluded that there was adequate consideration given by Claimant for Employer's release of its subrogation right, and that Employer therefore waived the right to credit for future benefits payable to Claimant for the work injury. Employer's appeal to this Court followed.[1]

■ The purpose of the Act is to give the employee an exclusive right to benefits without the necessity of proving fault, in exchange for the abrogation of the employee's common law remedies. *LeFlar v. Gulf Creek Industrial Park # 2*, 511 Pa. 574, 515 A.2d 875 (1986). Thus, the employer who pays compensation to the employee is subrogated to the right of the employee against the third-party tortfeasor pursuant to Section 319 of the Act, which provides in pertinent part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable ... by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

■ In *Winfree v. Philadelphia Electric Co.*, 520 Pa. 392, 397, 554 A.2d 485, 487 (1989), the Supreme Court held that "[a]s a general principle of law, the employer's subrogation rights are statutorily absolute and can be abrogated *only by choice*." (Emphasis added.) This Court has subsequently held that the agreement, in which the employer releases or waives its subrogation right against the claimant's third-party settlement recovery is valid under the Act, and

---

1. This Court's scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick)*, 158 Pa.Cmwlth. 582, 632 A.2d 947 (1993).

that the claimant in such situation is entitled to the benefit of the bargain. *See Baus v. Workmen's Compensation Appeal Board (Nelson Co.)*, 137 Pa.Cmwlth. 121, 585 A.2d 573 (1991); *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989).[2] Therefore, the Release is . valid and enforceable under. the Act, and the parties' rights and obligations set forth in Section 319 of the Act are inapplicable to this matter.[3]

Employer nonetheless contends that even if the Release is valid under the Act, it is still void or voidable for lack of consideration and due to a mistake of law or fact, or duress.

■ To form a valid contract, all of the essential elements, including consideration, must exist. *Department of Transportation v. First Pennsylvania Bank*, 77 Pa.Cmwlth. 551, 466 A.2d 753 (1983). Consideration exists where there is a bargained-for exchange by the parties to the contract. *Id.* Employer asserts that there was no bargained-for exchange because under Section 319, Claimant was already legally bound to repay the amount of the accrued subrogation lien from his third-party settlement recovery.

■ Generally, an agreement lacks consideration, if one of the parties is already legally bound to render the performance promised. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 344 A.2d 837 (1975). It is also well established, however, that the surrender or compromise of a doubtful or disputed claim and forbearance to sue thereon constitute sufficient consideration. *Cohen v. Sabin*, 452 Pa. 447, 307 A.2d

845 (1973); *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 123 A.2d 663 (1956).

■ In this matter, Employer agreed to release all claims arising under Section 319 of the Act after Claimant's counsel raised during the negotiations the question of Employer's negligence in removing the safety devise from the machine. Employer decided to settle the dispute based on Claimant's promise not to contest its subrogation interests. Therefore, there was a bargained-for exchange.[4]

Further, the Release contained the language, "we have here unto set our hands and corporate seal," and the word "seal" was preprinted next to the signature of Allen Belenson, Employer's Secretary and General. Counsel. In *Graybill v. Juniata County School District*, 21 Pa.Cmwlth. 630, 347 A.2d 524, 526 (1975), the contracts contained the similar language, "the parties above named hereunto set their hands and seal," along with the word "seal" or "L.S." affixed next to or under the signatures. Although no formal raised corporate seal was affixed, as in this matter, this Court held that the presence of these markings provided ample evidence that the contracts were executed under seal.

■ As to the common law effect of a seal in a· written document, the Supreme Court stated:

[O]nce plaintiff has proved the signature, consideration ... may be presumed from the fact that the instrument is under seal. . . . In other words, a plaintiff who relies upon a sealed instrument . is not

---

2. On the other hand, an agreement, in which a *claimant* waives his or her future compensation in exchange for an employer's acceptance of less than the amount of benefits paid as of the date of the claimant's settlement in the third-party action, is null and void under Section 407 of the Act, 77 P.S. § 731, which provides that "[a]ny agreement ... varying the amount to be paid or period during which compensation shall be payable ..., shall be wholly null and void." *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985).

3. Employer argues, without citing any authority, that in the Release it did not waive or release its right to credit for future benefits payable to Claimant because such credit is not a "claim" for the accrued subrogation lien. Employer's at-

tempt to distinguish between the claim and the credit is untenable. Under Section 319, any recovery in excess of the accrued subrogation lien is treated as an advance payment. In the Release, Employer agreed to release all claims, including all "future claims," arising under Section 319.

4. Five months after the execution of the Release, this Court rejected the claimant's argument that the employer's subrogation rights under Section 319 must be adjusted to reflect the employer's negligent conducts. *See Swink v. Workmen's Compensation Appeal Board (Burrell Construction & Supply Co.)*, 97 Pa.Cmwlth. 623, 510 A.2d 860 (1986), *appeal dismissed*, 517 Pa. 504, 539 A.2d 348 (1988).

obliged to prove consideration to take the case to the jury. The seal imports consideration.

*Selden v. Jackson,* 425 Pa. 618, 619, 230 A.2d 197, 197–98 (1967). Thus, where, as here, a contract is executed under seal, a party may not raise, as a defense, *want* of consideration, distinguished from *failure* of consideration. *Barnhart v. Barnhart,* 376 Pa. 44, 101 A.2d 904 (1954).[5] Hence, Employer in this matter may not raise lack or want of consideration to avoid the terms of the Release.

■ Moreover, regardless of lack of consideration, the Release is also valid and enforceable under the Act of May, 13, 1927, P.L. 985, 33 P.S. § 6, commonly known as the Uniform Written Obligations Act, which provides:

> A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.

In the Release executed under seal, Employer unequivocally agreed to release and discharge Claimant from "any and all past, present or future claims" arising under Section 319 of the Act. The Release did not contain any condition or disclaimer which would refute Employer's intent to be legally bound by the terms therein.

Employer argues, however, that the Uniform Written Obligations Act is inapplicable to this matter under Section 410 of the Act, 77 P.S. § 731, which provides that "[a]ll agreements made in accordance with this section shall be on a form prescribed by the department." Employer also relies on 34 Pa.Code § 121.17, which requires the parties to execute the Third Party Settlement Agreement and Supplemental Agreement in the event of the third-party recovery.

■ The purpose of Section 410 of the Act "was to protect claimants from imposition and improvidence." *Enos v. Walter,* 194 Pa.Super. 53, 166 A.2d 78, 80 (1960). Section 411 of the Act, 77 P.S. § 733, further requires "the department to examine the agreement to determine whether it conforms to the provisions of [the Act] and rules and regulations...." However, the need for the department's oversight to protect Claimant is not present in this matter because Employer, not Claimant, is attempting to avoid the terms of the agreement. The purpose of Sections 410 and 411 protecting the workers will not be served by invalidating the Release and denying Claimant the bargain obtained through the negotiations.

We also reject Employer's contention that it executed the Release by a mistake of law or fact. Before the WCJ, Employer argued that there was a mistake of law or fact because Claimant's attorney also "represented" Employer's subrogation interests in Claimant's third-party action, and because during the negotiations Claimant's attorney misrepresented applicable law under Section 319 of the Act to Employer.

As the WCJ found, however, Employer retained its own counsel to monitor Claimant's third-party action, and there was no attorney-client relationship between Claimant's attorney and Employer. Moreover, Employer decided to settle the disputed claim on the advice of its counsel. Therefore, the record simply does not support Employer's claim that it executed the Release by a mistake of law or fact.

■ Finally, Employer contends that it executed the Release under "the perceived duress" that Claimant would not repay the amount of the accrued subrogation lien unless it agreed to the terms of the agreement proposed by Claimant. Employer's Brief, p. 21. Employer is a large corporation and was represented by counsel when it executed the Release. Where, as here, a party had a reasonable opportunity to consult with legal counsel before entering into a contract, the party may not seek to invalidate the contract on the basis of economic duress. *Sofronski v. Civil Service Commission, City of Philadelphia,* 695 A.2d 921 (Pa.Cmwlth.1997).

---

5. Want of consideration means that no consideration was intended to pass; failure of consideration means that exchange of a valuable consideration was intended, but was not received. *Levine Estate,* 383 Pa. 354, 118 A.2d 741 (1955).

■ In conclusion, the Release is valid and enforceable. Since Employer waived its subrogation right under Section 319 of the Act, it is not entitled to credit for future benefits payable to Claimant against his third-party settlement recovery. Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 23rd day of June, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.