Kristina **FORTWANGLER**, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (QUEST DIAGNOSTICS and Travelers Property and Casualty Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 2014.
Decided March 31, 2015.

Barbara E. Holmes, Pittsburgh, for petitioner.

Michael Relich, Pittsburgh, for respondents.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

Kristina Fortwangler (Claimant) petitions for review of the May 28, 2014 order of the Workers' Compensation Appeal Board (Board), which reversed the decision of a workers' compensation judge (WCJ) granting Claimant's petition to reinstate/review compensation benefits and held that Quest Diagnostics (Employer) had not waived its future subrogation

rights under section 319 of the Workers' Compensation Act (Act).[1] We affirm.

On January 25, 2007, Claimant sustained a cervical strain in a work-related motor vehicle accident, and Employer accepted liability for the injury by way of a notice of compensation payable. (Board's op. at 1.) On November 17, 2010, Claimant filed a petition to reinstate/review compensation benefits, alleging that, based on a third-party settlement agreement, Employer was paying her benefits at an incorrect rate and taking a credit to which it was not entitled. (WCJ's Finding of Fact No. 1.) The petition was assigned to a WCJ, who held multiple hearings.

Claimant testified that she settled the third-party case against the driver involved in the motor vehicle accident. Claimant stated that she was not present during negotiations between her then-counsel and Employer's workers' compensation insurance carrier (Insurer). She testified that she and Insurer initially signed a December 5, 2008 third-party settlement agreement (Original SA). (Reproduced Record (R.R.) at 61a–63a, 65a, 72a). The Original SA recognized an accrued lien of $28,985.72, from which $10,018.51, the expenses attributable to recovering the accrued lien, was subtracted to calculate a net lien of $18,969.21 owed to Employer. (R.R. at 151a.) The Original SA also provided under a paragraph entitled "Further Matters Agreed Upon" as follows:

The defendant/employer and its workers' compensation insurance carrier have an accrued lien of $28,985.72 as of the date of this agreement. The claimant has a third party claim against Lester Kemp arising out of the work injury of 1/25/2007 which has settled for a lump sum payment of $100,000.00. The defendant/employer, and its workers' compensation insurance carrier, hereby agree to a payment of $19,500.00 in full satisfaction of the defendant/employer's (and its workers' compensation insurance carrier's) right to subrogate against the third party settlement. The employer specifically waives its right to subrogation against future benefits payable to or on behalf of the claimant in exchange for and in consideration of the monies paid to employer in excess of the net lien to which the employer is entitled.

(R.R. at 151a.)

Claimant testified that, based on conversations with her former counsel, she understood that Employer waived its past and future subrogation rights as part of the settlement agreement. Claimant stated that she misplaced the signed Original SA and that her former counsel sent her an unsigned copy in the mail, which she submitted at the hearing. (R.R. at 64a–65a, 72a.)

Claimant further testified that she signed a January 7, 2009 corrected third-party settlement agreement (Corrected

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

Section 319 of the [Act] provides that where a compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee against such third party to the extent of compensation payable. Thus, an employer who has paid workers' compensation benefits to a claimant injured by a third party has an absolute right to immediate payment of its subroga-

tion lien from the claimant's recovery against the third party, after payment of attorney fees and litigation expenses; to the extent the recovery exceeds the past due lien and litigation costs, the balance is paid to the claimant, and the employer retains a contingent lien against this payment for the reimbursement of future compensation benefits which may become payable.

*Reeder v. Workers' Compensation Appeal Board (Mercer Lime and Stone Co.),* 871 A.2d 337, 339 n. 1 (Pa.Cmwlth.2005).

SA) to account for an additional medical bill, with the same understanding that Employer waived both past and future subrogation rights. (R.R. at 65a–66a, 70a.) The Corrected SA accounted for further indemnity benefits paid by Employer that were not contained in the Original SA, resulting in an accrued lien of $30,280.37. Claimant and Insurer subtracted $10,462.23, the expenses attributable to recovering the accrued lien, to calculate a net lien of $19,818.14 owed to Employer. (R.R. at 149a.) The Corrected SA amended the "Further Matters Agreed Upon" paragraph to read as follows:

> The defendant/employer and its workers' compensation insurance carrier have an accrued lien of $30,280.37 as of the date of this agreement. The claimant has a third party claim against Lester Kemp arising out of the work injury of 1/25/2007 which has settled for a lump sum payment of $100,000.00. The defendant/employer, and its workers' compensation insurance carrier, hereby agree to a payment of $19,818.14 in full satisfaction of the defendant/employer's (and its workers' compensation insurance carrier's) right to subrogate against the third party settlement.

(R.R. at 149a.)

Claimant testified that, even though the Corrected SA removed the sentence that expressly waived Employer's *future* subrogation rights, her understanding remained the same. She stated that she has not been paid the full amount of workers' compensation since she signed the Corrected SA and that her doctors are also being paid at a lower rate. Claimant added that her former counsel explained Employer's waiver of subrogation rights before she signed the Original SA but did not discuss with her why the sentence expressly waiving Employer's subrogation rights for future payments was deleted in the Corrected SA. Claimant testified that her entire understanding of both settlement agreements was based on discussions with her former counsel and not with Employer or Insurer. (R.R. at 65a–67a, 69a, 75a–76a, 78a.)

By decision and order dated March 18, 2013, the WCJ found Claimant's testimony credible to establish that the only purpose for executing the Corrected SA was to change the amount of indemnity benefits paid and not for Employer to retain subrogation rights against future benefits paid. The WCJ also found that the deletion of the express language waiving Employer's future subrogation rights was not dispositive. The WCJ concluded that Claimant's payment of $19,818.14 "in full satisfaction of the defendant/employer's (and its workers' compensation insurance carrier's) right to subrogate against the third party settlement," (R.R. at 149a), demonstrated Employer's intent to waive both past and future subrogation rights. Thus, the WCJ determined that Employer waived both past and future subrogation rights based on the consideration of the $19,818.14 received under the Corrected SA and granted Claimant's reinstatement/review petition. Employer appealed to the Board.

By opinion and order dated May 28, 2014, the Board held that Claimant failed to carry her burden of establishing that Employer waived its future subrogation rights. The Board concluded that, although the WCJ found Claimant's testimony credible, *Claimant's "understanding" of the Corrected SA was not sufficient evidence to support her burden.* The Board noted that Claimant presented no evidence to support her understanding, even though she had subpoenaed the files of her former counsel. The Board concluded that in the absence of such evidence the WCJ erred in determining that Employer waived its future subrogation rights

and reversed the WCJ's order granting Claimant's reinstatement/review petition.

On appeal to this Court,[2] Claimant argues that the Board erred in reversing the WCJ's determination that Employer waived its future subrogation rights.

Section 319 of the Act provides for an employer's subrogation rights in pertinent part as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671.

Our Supreme Court explained that the rationale behind the right to subrogation is threefold: "to prevent double recovery for the same injury by the claimant, to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence." *Dale Manufacturing Company v. Bressi*, 491 Pa. 493, 421 A.2d 653, 654 (1980). "[T]his result is just, because the party who caused the injury bears the full burden; the employee is 'made whole,' but does not recover more than what he·requires to be made whole; and the employer, innocent of negligence, in the end pays nothing." *Id.* (citation and quotations

omitted). Where a third party's negligent conduct causes the employee's work injury, "there is a clear, justifiable right to subrogation under Section 319 of the Act." *Id.* "An employer's entitlement to subrogation is a question of law based upon the facts as found by the WCJ." *Kennedy v. Workers' Compensation Appeal Board (Henry Modell & Co., Inc.)*, 74 A.3d 343, 346 (Pa. Cmwlth.2013).

An employer's subrogation right is both automatic and absolute, *Gorman v. Workers' Compensation Appeal Board (Kirkwood Construction)*, 952 A.2d 748, 751 (Pa.Cmwlth.2008), and "can be abrogated only by choice." *Winfree v. Philadelphia Electric Company*, 520 Pa. 392, 554 A.2d 485, 487 (1989). There are two aspects to an employer's subrogation rights: the compensation previously paid to a claimant by an employer is the accrued lien or "past" aspect and the credit toward compensation payable is the "future" aspect to be paid subsequently upon settlement of the accrued lien. *Dasconio v. Workers' Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92, 97 (1989). Calculation of an employer's future subrogation rights is dependent upon the amount of the claimant's recovery from the third-party settlement and the amount of compensation previously paid to a claimant by the employer. *Id.* An employer's settlement of its accrued lien for a lesser sum of money has no bearing on the calculation of the employer's future subrogation rights because the settlement does not change the amount of compensation that the employer previously paid. *Id.*

However, an employer may agree to waive its past and future subroga-

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

tion rights. *See id.* at 96. "[A] release or waiver by an [employer] of its right to a credit against compensation payable to a claimant after the date of settlement of an action against a third-party tortfeasor [does not] violate the provisions of the Act or the public policy or laws of this Commonwealth." *Bayush v. Workers' Compensation Appeal Board (Conemaugh Township)*, 111 Pa.Cmwlth. 617, 534 A.2d 853, 856 n. 4 (1987). "[A] compromise and release agreement only extinguishes liability which is claimed to exist under the Act where the person with the claim *specifically agrees* to relieve the liable person from *that* liability." *Gingerich v. Workers' Compensation Appeal Board (U.S.Filter)*, 825 A.2d 788, 791 (Pa.Cmwlth.2003) (emphasis added). Thus, an employer only waives past *and* future subrogation rights when the release agreement relates to *both* sets of rights, and a release of one set of rights does not require a release of the other. *See Dasconio*, 559 A.2d at 97 (stating that the release agreement only related to the employer's past subrogation rights).

 Claimant argues that Employer waived its future subrogation rights based on the express language of the Corrected SA. "In applying common principles of contract interpretation, we note that the fundamental rule of construing a contract is to ascertain and give effect to the intention of the parties.... Generally, the intent of the parties to a written contract is contained within the contract itself, and when the words are clear and unambiguous, the intent is to be found only in the express language of the agreement." *Crawford v. Workers' Compensation Appeal Board (Centerville Clinics)*, 958 A.2d 1075, 1083 (Pa.Cmwlth.2008) (citation and quotations omitted). Clear contractual terms are terms that only have one reasonable interpretation. *Amerikohl Min-*

*ing, Inc. v. Mount Pleasant Township*, 727 A.2d 1179, 1182 (Pa.Cmwlth.1999). "Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic evidence, *i.e.*, parol evidence, to resolve the ambiguity." *Id.* (citation and quotations omitted).

Contrary to Claimant's argument, the Corrected SA's language is susceptible to more than one reasonable interpretation. The sentence in dispute—"The defendant/employer, and its workers' compensation insurance carrier, hereby agree to a payment of $19,818.14 in full satisfaction of the defendant/employer's (and its workers' compensation insurance carrier's) right to subrogate against the third party settlement," (R.R. at 149a)—can reasonably be interpreted, as Claimant suggests, to mean that the accepted $19,818.14 completely satisfies Employer's subrogation rights, both for the past and future. However, as Employer notes, the language "full satisfaction" is the only language that could reasonably be interpreted to encompass waiver of future subrogation rights. There is no explicit waiver or mention of future subrogation rights contained within the Corrected SA. Thus, the term "full satisfaction" can also reasonably be interpreted to merely mean waiver of subrogation rights only to the extent of Employer's accrued lien, which was specifically calculated in the Corrected SA. Because the Corrected SA is susceptible to differing reasonable interpretations, it is appropriate to examine all of the evidence in the record beyond just the document itself, as the Board did in rendering its decision. *Amerikohl Mining.*

The Original SA, submitted by Claimant, contained express language waiving future subrogation rights as follows: "The employer specifically waives its right to subrogation against future benefits payable to

or on behalf of the claimant *in exchange for and in consideration of the monies paid to employer in excess* of the net lien to which the employer is entitled." (R.R. at 151a) (emphasis added). Although the Original SA of record does not contain any signatures, Claimant testified that both she and Insurer signed it. (R.R. at 64a–65a, 72a.) In the Original SA, Claimant agreed to ·pay Employer $530.79 more than the net lien of $18,969.21 owed to Employer in consideration of waiver of past and future subrogation rights. However, in the Corrected SA, Claimant agreed to pay Employer the exact amount of the net lien owed to Employer, which is $19,818.14, providing no consideration for waiver of future subrogation rights. Moreover, the express language found in the Original SA waiving Employer's future subrogation rights was deleted from the Corrected SA.

 All essential elements, including consideration, must be present for a valid contract to exist. *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 714 A.2d 496, 500 (Pa.Cmwlth. 1998). "Consideration exists where there is a bargained-for exchange by the parties to the contract." *Id.* "Generally, an agreement lacks consideration, if one of the parties is already legally bound to render the performance promised." *Id.*

In *Smalls*, the claimant sustained work injuries and commenced a third-party action against a machine manufacturer. The parties executed a settlement agreement under which the manufacturer paid the claimant a lump sum of money. Thereafter, the claimant and the employer engaged in negotiations regarding the employer's subrogation interests. The employer indicated to the claimant that it had an accrued subrogation lien of $98,014.81 and that it was willing to pay one-third of the attorney's fees and

$2,000.00 of the litigation costs the claimant incurred from the third-party action. The claimant countered by first questioning whether the employer had a valid claim to subrogation and then stated that the claimant would pay the employer $63,343.21, an amount that was two-thirds of the accrued subrogation lien minus the $2,000.00 in litigation costs. The claimant and the employer executed a general release agreement, where the employer waived all "past, present or future" subrogation rights against the claimant in consideration of the $63,343.21. *Id.* at 498.

After the execution of the general release, the claimant again experienced disability from the work injuries. The employer filed a petition that sought a credit against future benefits payable. After a hearing, the WCJ determined that the general release was valid and denied the employer's petition. The Board remanded, stating that the WCJ failed to address whether there was a lack of consideration for the employer's release of its subrogation rights. On remand, the WCJ determined that there was no consideration for the release of the employer's subrogation rights, and, thus, granted the employer's petition. The Board reversed, concluding that there was adequate consideration given for the release of the employer's subrogation rights. The employer appealed to this Court.

We stated that, in order for a valid contract to exist, there must be adequate consideration beyond what the parties are already legally bound to render or perform. We determined that there was adequate consideration for the general release because the employer settled the case in accordance with the claimant's agreement that he would not contest the employer's subrogation rights; resulting in a bargained-for exchange between the employer and the claimant. We also noted that the

general release was signed under "seal," which, under common law, signifies consideration. Regardless of consideration, we further determined that the general release was valid and enforceable under the Uniform Written Obligations Act, Act of May 13, 1927, P.L. 985, 33 P.S. § 6, because the employer expressly stated that it would be legally bound to the release of all "past, present or future" subrogation rights. *Smalls,* 714 A.2d at 501 (quotations omitted). Thus, we affirmed the Board's order.

The facts in *Smalls* are distinguishable from the facts in this case. Unlike the language of the general release in *Smalls,* there is no express language of future waiver in the Corrected SA. In order for Employer to have waived its future subrogation rights, it must have expressly stated its intention to relinquish those rights. *Gingerich.* Employer did not unequivocally do so in the Corrected SA. In addition, there is no contention by Claimant that Employer did not have a valid subrogation claim—causing Employer to accept a lower sum of money in exchange for Claimant's agreement not to contest Employer's subrogation rights—nor is there any evidence that such a discussion occurred during negations, as was the situation in *Smalls.* Here, Employer accepted $19,818.14 "in full satisfaction of [its] right to subrogate against the third party settlement." (R.R. at 149a.) The $19,818.14 is the exact amount of the net accrued lien that Employer was already entitled to recover pursuant to section 319 of the Act at the time it sought recovery from the settlement amount. Thus, as Claimant was legally obligated to pay this amount, there was no consideration present for any waiver of future subrogation rights. Finally, the Corrected SA was not signed under seal, in contrast to the language of the general release in *Smalls.*

Although the WCJ found Claimant's testimony credible, Claimant only testified as to her "understanding" of the Corrected SA. As Claimant stated, her former counsel never explained to her the purpose and effect of deleting the sentence expressly waiving Employer's subrogation rights for future payments in the Corrected SA. (R.R. at 75a–76a.) Claimant also testified that she was not present during the negotiations and that her understanding only came from conversations with her counsel. (R.R. at 78a.) Moreover, none of the documents that Claimant submitted from her former counsel's file regarding the third-party settlement agreements support Claimant's contention that Employer specifically waived its future subrogation rights in the Corrected SA.

Claimant cites *Reeder* in support of her argument that she met her burden of proving Employer waived its future subrogation rights. However, the facts in *Reeder* are distinguishable from those presented here. In *Reeder,* the claimant settled a third-party civil action for $260,000.00, and, as part of the agreement, the employer's workers' compensation insurance carrier accepted a sum of $86,666.00 in satisfaction of its $180,000.00 accrued lien. A representative from the employer's workers' compensation insurance carrier was present for the negotiations. The representative sent a letter to the claimant confirming the settlement of the employer's lien.

Subsequently, the employer tendered a third-party settlement agreement to the claimant, asserting that it had a right to a grace period against future medical benefits paid to the claimant. The claimant refused to sign the settlement agreement, stating that the $86,666.00 constituted a full waiver of all of the employer's subrogation rights, both past and future. The employer filed a modification/review peti-

tion seeking to modify the compensation payable to the claimant and asserting a subrogation credit against the third-party recovery.

The petition was assigned to a WCJ. The employer submitted the deposition testimony of the representative who was present at the negotiations. The representative testified that he never agreed that the $86,666.00 was in exchange for the waiver of credit against future medical expenses and that he was never asked to do so during the negotiations. The WCJ found the representative's testimony credible. Neither party presented evidence demonstrating such an agreement. Thus, the WCJ determined that the $86,666.00 settlement did not apply to the employer's future subrogation rights and granted the employer's modification petition. The Board affirmed.

On appeal to this Court, the claimant argued that the representative's letter demonstrated that the employer waived its future subrogation rights. The letter stated: "This will confirm our compromise of our lien at $86,666. Please send your Draft, with our Claim number on it, to . . . ." *Id.* at 340. We determined that, because the WCJ accepted the representative's testimony that the employer's workers' compensation insurance carrier never intended to waive future subrogation rights as credible, substantial evidence supported the WCJ's findings. Accordingly, we affirmed the WCJ's decision.

Differing from this case, the employer in *Reeder* was the moving party and bore the burden of proving that it did not waive future subrogation rights. Here, Claimant bore the burden of proof. *Harmar Coal Company v. Workmen's Compensation Appeal Board,* 30 Pa.Cmwlth. 64, 372 A.2d 1244, 1245 (1977) ("It is clear that the moving party has the burden of proof. . . ."). Although Claimant argues

that her testimony demonstrates that Employer waived its future subrogation rights, unlike the testimony of the representative in *Reeder,* Claimant was not a party to the negotiations. Even though Claimant credibly testified as to her *understanding* of the Corrected SA, Claimant failed to produce any firsthand knowledge of the negotiations regarding the Corrected SA. Moreover, Claimant was unable to produce any evidence in support of her understanding beyond the Corrected SA itself, which we have determined is capable of dual interpretations.

In other words, this case is not resolved on credibility determinations but on the sufficiency of the evidence. While the Board noted that the WCJ found Claimant's testimony credible as to her "understanding" of both the Original SA and the Corrected SA, it found that Claimant "presented no evidence to support this understanding." (Board's op. at 6.) Indeed, Claimant testified that her former counsel never explained to her why the sentence specifically waiving Employer's future subrogation rights was deleted from the Corrected SA and, as the Board found, failed to present any other evidence from her former counsel's file to support her understanding of the Corrected SA. Although Claimant's testimony regarding her understanding was found credible by the WCJ, she did not present any other evidence in support of her understanding. Moreover, the copy of the Original SA submitted by Claimant is not signed by either party. Thus, there is substantial extrinsic evidence in the record to support the Board's interpretation of the Corrected SA that Employer did not waive its future subrogation rights.

Because the Corrected SA is susceptible to different interpretations, Claimant failed to present evidence to support her understanding of the agreement, and there

was no consideration for Employer's waiver of future subrogation rights, the Board did not err. in reversing the WCJ's order. Accordingly, we affirm.

### ORDER

AND NOW, this 31st day of March, 2015, the May 28, 2014 order of the Workers' Compensation Appeal Board is affirmed.