**McMunn v. Upperman**

*Thomas W. Leslie,* for plaintiff.
*Joseph J. Kearney,* for defendant Husband.
*Thomas A. Shumaker,* for defendant Wife.

WHERRY, *S.J.,* August 21, 2006—This opinion is issued pursuant to Pa.R.A.P. 1925(a) in support of the order of court issued July 21, 2005, which held: (1) that, although the affidavit of the plaintiff, Debbie M. Upperman, is valid and recordable, said document did not constitute a valid transfer of ownership from plaintiff to defendants of the contested property pursuant to the standards enunciated in *Manley v. Manley,* 238 Pa. Super. 296, 357 A.2d 641 (1976); and, (2) that the defendant, Buddy Upperman, was entitled to receive $49,500 from the plaintiff.

The relevant facts are as follows: The defendants, Buddy L. Upperman (Husband) and Debbie M. Upperman (Wife), were married sometime in March of 2001. (N.T. 09-14-2004 p. 13.) On or about the time of defendants' marriage, Debbie M. Upperman (plaintiff) indicated that she wanted to give the defendants a certain tract of land (contested property) as a wedding present. (N.T. 09-14-2004 p. 14.) Sometime after the defendants' marriage, the parties viewed the land that plaintiff intended to give to the defendants and memorialized their understanding via a sketch drafted by Husband. (N.T. 09-14-2004 pp. 16-17.) On the back of this sketch, Wife drafted certain language purporting to memorialize the parties' understanding that the land was to be transferred from plaintiff to the defendants. (N.T. 09-14-2004 p. 17.) Wife testified that she reviewed the map and written understanding with plaintiff, after which time, Wife and plaintiff traveled to Attorney Shumaker's office, where plaintiff and Wife signed the written understanding attached to the map and Attorney Shumaker notarized and recorded the affidavit. (N.T. 09-14-2004 pp. 18-19.) The affidavit has been recorded in volume 1877 p. 37. (See N.T. 09-14-2004 p. 32.) Husband testified that he relied on the recorded memorialization of plaintiff's intent to convey the property. (N.T. 09-14-2004 p. 33.)

Plaintiff testified that she signed the recorded instrument; however, she claimed that, prior to signing, she did not read the document and that there was no map drawn on the reverse side of the document when she signed it. (N.T. 09-14-2004 pp. 40-41.) Plaintiff testified that there was a witness to support her version of the signing of the affidavit and the original contents of the same; however, plaintiff declined to name this witness

and expressed in her testimony that the witness was unavailable to testify. (See N.T. 09-14-2004 pp. 5, 46-47.) Plaintiff also disputed Wife's recollection of the amount of times plaintiff visited the contested property, but did admit to viewing it with Wife approximately 12 times. (N.T. 09-14-2004 pp. 42-43.) Plaintiff also denied walking the property with the defendants prior to signing the recorded instrument. (N.T. 09-14-2004 p. 45.) Plaintiff admitted that she knew defendants were conducting a perk test on the contested property, but denied any understanding of the purpose of said test. (N.T. 09-14-2004 pp. 45-46.)

Wife testified that, from October 2001 through 2003, plaintiff accompanied Wife on approximately 20 to 25 separate instances to the contested property to view the progress of the defendants' work on the property. (N.T. 09-14-2004 p. 22.) Additionally, Husband further testified that plaintiff visited him without Wife on approximately 30 additional instances. (N.T. 09-14-2004 p. 35.)

Plaintiff was kept informed of the progress of the defendants' efforts to build their residence on the contested property, including their application for building permits and the undertaking of a perk test. (N.T. 09-14-2004 p. 23.) During these updates, and until the defendants were removed from the contested property, plaintiff never voiced objections to the defendants regarding their work. (N.T. 09-14-2004 p. 13.)

The defendants attempted to have the contested property surveyed by Greg Tomo; however, Mr. Tomo was unable to complete the survey because someone allegedly removed the flags he had placed. (N.T. 09-14-2004 pp. 25-26.) Defendants testified that she and Husband were unaware that permits were required for the construc-

tion of a bridge on the contested property. (N.T. 09-14-2004 pp. 26, 36.)

Husband testified that he spent $10,000 on equipment used solely on the contested property and an additional $10,000 on supplies. (N.T. 09-14-2004 pp. 38-39.) The testimony indicated that Husband removed 300-400 trees on the contested property in order to make it suitable for building. (N.T. 09-14-2004 p. 21.)

The first issue for this court to address is the status of the outstanding counterclaim filed by Wife in this action. After a review of the file, the court believes that it inadvertently failed to address Wife's motion for leave to file Rule 2252(d) counterclaim as to defendant, Buddy Upperman. This court notes that, pursuant to Pa.R.C.P. 2253, defendant was required to obtain the consent of all counsel, or, in the alternative, permission by order of court, due to the fact that the filing of this petition on December 22, 2004 was well beyond 60 days from the November 13, 2003 filing of the complaint by plaintiff. Since there is no record of consent by counsel in this matter, this court respectfully submits that the Superior Court retains jurisdiction based upon the fact that Wife's proposed order granting her leave to file a counterclaim pursuant to Pa.R.C.P. 2252(d) was "crossed out" and essentially denied by this court.

The second issue for the court to address is whether the evidence in this case established the existence of a parol sale or gift of land between family members under the case of *Manley v. Manley*, 238 Pa. Super. 296, 305, 357 A.2d 641, 645-46 (1976). The Pennsylvania Superior Court has established the high standards for establishing title to land via parol evidence:

"The standards for establishing by parol evidence the existence and contents of a lost deed are the same as those for establishing a parol sale or gift of land: 'We are virtually establishing title to land by parol, and the proofs should therefore be as explicit as in the case of the specific enforcement of a parol sale under the statute of frauds and perjuries: Good's Petition, 1 Dist. Rep. 569.' *Nicholls' Petition,* 190 Pa. 308, 313, 42 A. 692, 694 (1899). Compare *Myers v. Marquette,* 311 Pa. 198, 166 A. 361 (1933). A party seeking to establish title to land by parol testimony must meet a very high burden: 'To overcome a record title, a claimant relying upon an oral agreement of sale or exchange must present evidence of the same that is "direct, positive, express and unambiguous," expressly defining all the terms and conditions of the contract and leaving nothing to guesswork or subject to misinterpretation. If the evidence submitted fails to meet these requirements, the Statute [of Frauds] strikes down the alleged bargain as inoperative, turning it into a mere lease or estate at will: Act of March 21, 1772, 1 Sm. L. 389, sec. 1, (33 P.S. sec. 1); *Glass v. Tremellen,* 294 Pa. 436, 144 A. 413 (1928); *Hart v. Carroll,* 85 Pa. 508; *Sample v. Horlacher,* 177 Pa. 247, 35 A. 615 (1896); *Wright v. Nulton,* 219 Pa. 253, 68 A. 707 (1908); *Sorber v. Masters,* 264 Pa. 582, 107 A. 892 (1919); *Breniman v. Breniman,* 281 Pa. 304, 126 A. 751 (1924).' *Kirk v. Ford,* 330 Pa. 579, 580-81, 200 A. 26, 27 (1938)." *Manley v. Manley,* 238 Pa. Super. 296, 305, 357 A.2d 641, 645-46 (1976).

The court in *Manley* went on to discuss the standard as it applies to transfers between family members, such as the instant case:

"[C]ourts are cautioned to view with special circumspection transfers of property between family members: 'The very nature of the relation, therefore, requires the contracts between parents and children to be proved by a kind of evidence that is very different from that which may be sufficient between strangers. . . . [A]ll the acts necessary for its [the contract's] validity must have special reference to it, and nothing else: 2 Penn Rep. 365; 8 Barr 213; 9 *Id.* 262; 2 *Harris* 201; 7 *Id.* 251-366; 1 *Casey* 308; 2 *Jones* 175. The importance of this rule is apparent; for it requires but a glance over the cases of this class to discover how sad has been the experience of the courts in family disputes, growing out of the exceptions which have been allowed to this statute [Statute of Frauds]; and how many and how distressing must have been the ruptures of the closest ties of kindred that have been produced and perpetrated by the encouragement thus given to try the experiment of extracting legal obligations out of parental [or filial] kindness.' *Poorman v. Kilgore,* 26 Pa. 365, 372 (1855). See also, *Brotman v. Brotman,* 353 Pa. 570, 46 A. 2d 175 (1946); *Glass v. Tremellen,* 294 Pa. 436, 144 A. 413 (1928); *Sorber v. Masters,* 264 Pa. 582, 107 A. 892 (1919); *Erie & W.V. R. Co. v. Knowles,* 117 Pa. 77, 11 A. 250 (1887); *Jordan v. Jordan,* 93 Pa. Super. 519 (1928). 'When an attempt is made to set up a parol contract of sale . . . [between family members] it has been held that the contracting parties must be brought face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties.' *Glass v. Tremellen, supra* at 438-39, 144 A. at 414, quoting *Ackerman v. Fisher,* 57 Pa. 457, 459 (1868)."

*Manley v. Manley,* 238 Pa. Super. at 305-306, 357 A.2d at 645-46.

Further, a litigant must establish with particularity every element of that claim:

" 'The evidence must define the boundaries and indicate the quantity of land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.: *Hart v. Carroll,* 85 Pa. 508, 510.' *Klingensmith v. Klingensmith,* 375 Pa. 178, 183, 100 A.2d 76, 78 (1953). Additionally, when the litigant seeks to rest his claim on a deed, which is not produced in court, he must also establish by 'clear, precise, and indubitable evidence' the facts and circumstances of delivery. *Sorber v. Masters, supra.* 'The Statute of Frauds prohibits the creation of interests in any land by parol. Its obvious purpose is to prevent the assertion of verbal understandings, and to obviate the opportunity for fraud and perjury. "It is not a mere rule of evidence. It is a declaration of public policy.": *Holland Fur v. Keystone Dehyd. Co.,* 151 Pa. Super. 495, 499, 30 A.2d 872. A writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance.' *Brotman v. Brotman, supra* at 573, 46 A.2d at 177. The failure of the moving party to sustain this heavy burden with respect to each and every element is fatal to his claim: 'It is no answer to say that the credibility of witnesses is for the jury, and that

they may disbelieve the testimony if they see fit to do so. That argument will not avail in this class of cases, for the question here is as to the character of the proof, because it is offered for the purpose of creating title to land by parol. It must conform to certain requirements, and if it does not, it will not suffice to create such title, and of this the court must judge.' *Erie & W. V. R. Co. v. Knowles, supra* at 86, 11 A. at 256." *Manley v. Manley,* 238 Pa. Super. at 306-307, 357 A.2d at 645-46.

The court finds that the recorded instrument does not satisfy the stringent standards set forth in *Manley.* Specifically, *Manley* requires that, in order to overcome a record title, one relying upon an oral agreement of sale or exchange must present evidence "direct, positive, express and unambiguous, [which] expressly [defines] all the terms and conditions of the contract and leaves nothing to guesswork or subject to misinterpretation." *Manley,* 238 Pa. Super. at 305, 357 A.2d at 645-46. Furthermore, *Manley* requires a stricter application, including a face-to-face meeting of the parties, of the aforestated standard when the purported agreement was between family members as in the instant case. *Id.* at 306-307. Lastly, a litigant must establish with particularity every element of their claim including the boundaries, the exact amount of consideration, and the existence of notorious and exclusive possession. *Id.* at 306-307. The evidence and testimony in the instance case are clearly unable to satisfy these aforementioned standards; therefore, the contested land was not conveyed from plaintiff to defendants pursuant to the standards enumerated in *Manley.*

Husband has contended that that the plaintiff committed an act, or acts, of fraud in her dealings with the de-

fendants regarding the contested property. Fraud comprises "anything calculated to deceive, whether by single act or combination . . . [I]t is any artifice by which a person is deceived to his disadvantage." *Reichert Estate,* 356 Pa. 269, 274, 51 A.2d 615, 617 (1947). Furthermore, the court has broad power to undo the effects of fraud, as stated in a long-standing Superior Court decision: "[F]raud vitiates everything that it touches, and an allegation of fraud coupled with a prayer for an appropriate and characteristic equitable remedy always calls forth the powers of the chancery court." *Fishel v. McDonald,* 163 Pa. Super. 251, 254, 60 A.2d 820, 822 (1948).

This court finds that the award in this case was not based upon fraud. The record, as accepted by this court, indicates that plaintiff intended to convey the property referred to in the affidavit and later changed her mind.

The court can find no basis to support the inference that the plaintiff intended to deceive defendants from the inception of the purported conveyance.

Husband has also raised a breach of contract claim in this dispute. The formation of a contract requires offer, an acceptance of that offer and an exchange of consideration. *Hartman v. Baker,* 766 A.2d 347 (Pa. Super. 2000), *appeal denied,* 564 Pa. 712, 764 A.2d 1070 (2000). Furthermore, "[t]o form a valid contract, all of the essential elements, including consideration, must exist." *SKF USA Inc. v. W.C.A.B. (Smalls),* 714 A.2d 496, 500 (Pa. Commw. 1998), citing *PennDOT v. First Pennsylvania Bank,* 77 Pa. Commw. 551, 466 A.2d 753 (1983). "Consideration exists where there is a bargained-for exchange by the parties to the contract." *SKF USA Inc.,* 714 A.2d at 500; *First Pennsylvania Bank,* 77 Pa. Commw. 551, 466 A.2d 753. A claim alleging breach of

contract must establish that: (1) a contract, in fact, existed; (2) a breach of duty regarding one of the terms in the contract occurred; and (3) the resultant damages from the breach. *Kane v. State Farm Fire and Casualty Co.,* 841 A.2d 1038 (Pa. Super. 2003); *Presbyterian Medical Center v. Budd,* 832 A.2d 1066, 1070 (Pa. Super. 2003).

This court finds the award in this case was not based upon Husband's breach of contract claim. Specifically, this court fails to find the existence of a contract between the parties. The purported transaction was to have been a gift from plaintiff to defendants, for which defendants had tendered no form of consideration; therefore, any agreement between the parties could not have amounted to a contract. See *Hartman,* 766 A.2d 347; see also, *SKF USA Inc.,* 714 A.2d at 500; *First Pennsylvania Bank,* 77 Pa. Commw. 551, 466 A.2d 753.

Husband has averred that he is entitled to restitution under a theory that plaintiff was unjustly enriched by Husband's "improvements" to the contested property. In discussing the requirements of the doctrine of unjust enrichment, our Commonwealth's Supreme Court has stated: "[a] person who has been unjustly enriched at the expense of another must make restitution to the other." *Binns v. First National Bank of California, Pennsylvania,* 367 Pa. 359, 372, 80 A.2d 768, 775 (1951) (quoting Restatement (First) of Restitution §1 (1937)). The Supreme Court has gone on to state that "it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happen-

ings.'" *Wilson Area School District v. Skepton,* 586 Pa. 513, 520, 895 A.2d 1250, 1254 (2006); see also, *Third National & Trust Company of Scranton v. Lehigh Valley Coal Company,* 353 Pa. 185, 193, 44 A.2d 571, 574 (1945); see also, *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 290, 259 A.2d 443, 448 (1969); *Wingert v. T.W. Phillips Gas & Oil Company,* 398 Pa. 100, 105, 157 A.2d 92, 94 (1959). Specifically, "[The doctrine of unjust enrichment] applies only to situations where there is no legal contract." *Durham Terrace Inc. v. Hellertown Borough Authority,* 394 Pa. 623, 148 A.2d 899, 904 (1959). The test for whether to apply this doctrine is as follows:

"The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. . . . The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. . . . Where unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. . . . In other words, the defendant makes restitution to the plaintiff in quantum meruit." *AmeriPro Search Inc. v. Fleming Steel Company,* 787 A.2d 988, 991 (Pa. Super. 2001).

This court's order was not based on Husband's claim of unjust enrichment. Although this court declined to find the existence of a contract between the parties, which could open the door for an unjust enrichment, this court

finds that the evidence and testimony submitted in the instant dispute do not warrant a finding that plaintiff was enriched by the actions and expenditures of the defendants. See *AmeriPro Search Inc.,* 787 A.2d at 991. Specifically, although the court accepts the evidence indicating that Husband had made substantial "improvements" to the disputed property in order to make said property suitable for the construction of a residence, the evidence and testimony also demonstrated that both plaintiff and defendants had been assessed numerous citations due to Husband's failure to obtain certain required permits prior to his actions. Therefore, this court is not inclined to find that Husband's expenditures and labor concerning the contested property were to the benefit of plaintiff.

Additionally, Husband has averred that he is entitled to restitution under a theory of conversion. The Pennsylvania Supreme Court has adopted several definitions of conversion: A conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn National Bank,* 435 Pa. 57, 60, 254 A.2d 637, 638 (1969). Conversion has also been defined as "an act of interference with the dominion or control over a chattel." *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964). Restatement (Second) of Torts defines conversion in section 222A(1) as follows: "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." The essential elements of the tort of conversion are as follows:

(1) The claimant: The claimant must have possessory rights to the chattel. He must be the possessor, or have the right of immediate or future possession. See Restatement §§224A, 225 and 243.

(2) The claim: The sole remedy for conversion is a judgment for money damages for the full value of the chattel, regardless of whether the chattel has been completely destroyed or lost. Conversion claims are unique from claims of trespass to chattels, in that the claimant need not accept return of the converted chattel, but is instead entitled to the full value of the chattel; when the actor pays that value, title passes to him. In effect, in conversion there is a forced judicial purchase, or sale, because of the wrongful appropriation. See Restatement §222A, comment C.

(3) Wrongful conduct: An exercise of dominion or control over the chattel by the actor is required, which may take on several forms: (a) Acquiring possession of the goods; (b) Transferring the goods in a manner which deprives the owner of control; (c) Withholding possession from one who has the right to it; and (d) Damaging or misusing the chattel. See *Martin v. National Surety Corp.*, 437 Pa. 159,165, 262 A.2d 672, 675 (1970).

(4) Effect of wrongful conduct: The exercise of dominion or control must result in such an unreasonable or serious deprivation of or interference with the claimant's possessory right so as to justify requiring the actor to pay the full value of the chattel. If the exercise of dominion is merely brief and harmless, there is no conversion; therefore, the severe remedy of forced sale will not be applied. See Restatement §222A, comment c.

In addressing Husband's conversion claim, the court notes that, in light of the findings that the affidavit did

not constitute a valid deed and the ownership of the contested property was never legally transferred to the defendants, it appears that the "claimants" in this action (defendants) do not have a valid possessory interest in the contested property. A claim of conversion would be inappropriate in this action because the defendants lack the requisite possessory interest in the contested property. See Restatement §§224A, 225 and 243. Therefore, the award to Husband in this case was not based on conversion.

Husband's final claim is one of promissory estoppel. The doctrine of promissory estoppel may afford recovery where "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Thatcher's Drug Store v. Consolidated Supermarkets,* 535 Pa. 469, 476, 636 A.2d 156, 160 (1994) (quoting Restatement (Second) of Contracts §90(1), which has been adopted as the law in Pennsylvania). A claimant may request money damages as relief in a promissory estoppel claim. See *DelConte v. Stefonick,* 268 Pa. Super. 572, 577, 408 A.2d 1151, 1153 (1979).

The court finds that the plaintiff, the promisor in this situation, should have reasonably expected that her stated intent to gift the contested property to the defendants, the promises in this situation, would induce the defendants to expend labor and resources on the development of the contested property. This court finds that Husband relied on the plaintiff's promise that the contested property was to be a wedding gift to the defendants. Husband justifiably relied on said promise to his detri-

ment and plaintiff was not entitled to rescind her promise after the defendants' marital status changed. Upon its finding that Husband's promissory estoppel claim merited relief, this court determined that an award of monetary damages would be the best mechanism available to make the Husband whole while preserving plaintiff's legal ownership of the contested property.

In conclusion, this court submits that it considered the evidence and testimony presented by the parties in its entirety. Specifically, this court considered the fact that Husband undertook the "improvements" to the contested property without obtaining the required permits for various projects. However, the court finds that this failure is one that could have been rectified over time and most likely would not have prevented defendants from building their home on the contested property. This court further considered Husband's workmanship regarding the "improvements" to the contested property. The fact that plaintiff did not dispute Husband's workmanship with credible evidence coupled with the court's finding that the defendants' testimony was credible while the plaintiff's testimony was incredible, led this court to accept Husband's estimate of $10 per hour as just compensation for his labor. The court also notes that no evidence was presented by any of the parties to substantiate the testimony regarding the purchase and liquidation of certain equipment and supplies meant for the "improvements" to the contested property. The court admits error in its finding that Husband sustained a $15,000 loss regarding these items. Specifically, after reviewing the notes of testimony it is apparent that the $15,000 figure was a misinterpretation of Husband's testimony by counsel. (See N.T. 09-14-2004 pp. 38-39.) Therefore, this

court is of the opinion that the evidence and testimony support a finding that Husband sustained a $10,000 net loss pursuant to the liquidation of the tools and supplies.

## ORDER

And now, August 21, 2006, the court having received notice that the above-captioned case has been remanded by the Superior Court, and this court having been directed to file a supplemental opinion pursuant to Pa.R.A.P. 1925(a), with Thomas W. Leslie, Esquire, representing the plaintiff, and Joseph J. Kearney, Esquire, representing the defendant, Buddy L. Upperman, and Thomas A. Shumaker, Esquire, representing the defendant, Debbie M. Upperman, the court hereby orders and decrees that:

(1) The court issues the attached opinion pursuant to Pa.R.A.P. 1925(a).

(2) The prothonotary shall serve notice of this order and opinion upon counsel of record for the parties, and if a party has no counsel, then upon said party at their last known address as contained in the court's file.