IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Wisnieski, : 
: No. 2395 C.D. 2015
Petitioner : Submitted: April 22, 2016
:
v. :
:
Workers' Compensation Appeal :
Board (Apollo Ridge School :
District and Highmark Casualty :
Insurance Company), :
:
Respondents :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                          FILED:  August 23, 2016

Steven Wisnieski (Claimant) petitions for review of the October 30, 2015 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) to grant the termination petition filed by Apollo Ridge School District (Employer) and deny Claimant's review, reinstatement, and penalty petitions.  We affirm.

Claimant worked for Employer as a custodial supervisor.  On April 20, 2012, Claimant sustained a work-related injury when he slipped and fell on his back and right side.  On November 1, 2012, Employer issued a medical only notice of compensation payable (NCP), which described the acknowledged work injury as

a contusion to the low back (right side) and right arm. Reproduced Record (R.R.) at 465a.

On April 23, 2012, Claimant treated with Employer's panel doctor, Charles W. Tragesser, Jr., D.C, a board-certified chiropractor. Claimant missed several days of work, but he returned with no restrictions. During the summer, Claimant's pain increased. By August 2012, he was using a cane prescribed by another physician and under restrictions of no bending, limited lifting, and regular sitting breaks. In January 2013, Claimant's family doctor imposed additional restrictions and limited Claimant to standing for only one or two hours during his shift. Claimant provided Employer with these additional restrictions on January 13, 2013, and the next day Employer told him not to return to work.[1]

On January 22, 2013, Claimant filed a review petition seeking to correct the description of the injury in the NCP to include a right leg radiculopathy.[2] Claimant also filed a reinstatement petition, averring a worsening of his condition and decrease in his earning power as of January 15, 2013. R.R. at

---

[1] Neither Claimant nor Employer explained why Claimant was told not to return to work on January 14, 2013.

[2] The first paragraph of Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, *as amended*, 77 P.S. §771, provides that a WCJ may at any time, review, modify, or set aside an NCP or agreement upon petition filed by either party with the department, or in the course of proceedings under any petition pending before the WCJ, if it be proved that the NCP or agreement was in any material respect incorrect. The second paragraph of Section 413(a), 77 P.S. §772, authorizes a WCJ to modify an NCP or agreement where there has been a change in the nature of the injury at some time subsequent to the issuance of the NCP or agreement.

54a-57a. In addition, Claimant filed a penalty petition,[3] alleging that Employer's failure to timely pay compensation was a violation of the Act. R.R. at 46a-49a. On July 19, 2013, Employer filed a termination petition, asserting that Claimant was fully recovered from his work injury as of July 5, 2013, and was able to return to work without restrictions. The petitions were consolidated and assigned to a WCJ for hearings.

Claimant testified at a February 28, 2013 hearing before the WCJ and by deposition on April 25, 2013, and April 9, 2014. Claimant stated that, following the April 20, 2012 injury, he continued to have low back pain shooting into his right leg, numbness in his right leg, and a pins and needles sensation in his toes. Claimant said he first sought treatment with Dr. Tragesser, who took him out of work for several days. He stated that although he returned to work with no restrictions, he continued to have pain. Claimant testified that he saw Dr. Tragesser two to three times a week, receiving manipulation, stimulation, massage, and exercise, for ninety days.[4] WCJ's Finding of Fact No. 3, R.R. at 163a-66a; 291a.

Claimant testified that his back and leg pain worsened significantly during the summer, and after 90 days, he sought treatment from his own

---

[3] Section 435 of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §991, authorizes the imposition of penalties against an employer or insurer for violations of the Act or its rules and regulations.

[4] Section 306(f.1)(1)(i) of the Act, added by the Act of July 2, 1993, P.L. 190, states that the employer must pay all reasonable medical services and provide a list of six designated health care providers, each of which cannot be "employed, owned, or controlled" by Employer. The employee is required to visit with one of the designated physicians or health care providers for a period of ninety (90) days from the date of the first visit. The employee's failure to comply with the foregoing will relieve the employer from liability for the payment of medical services. 77 P.S. §531(1)(i).

chiropractor, Daren C. Morgante, D.C. At Claimant's request, Dr. Morgante provided him a cane and additional restrictions of no bending, limited lifting, and breaks every thirty minutes during standing shifts. Claimant stated that Employer permitted the cane and accommodated the restrictions but still expected him to perform his full duties. Claimant said that his primary care physician, Rogi Paul, M.D., increased Claimant's restrictions in January 2013 to include standing for only one to two hours per shift. R.R. at 165a-69a.

Claimant remained under those restrictions until July 1, 2013, when Dr. Paul released him to full duty work on a trial basis. In November 2013, Claimant found another job and began working full time; however, the job required stretching, bending, and going up and down ladders for eight hours a day. Claimant testified that the pain eventually became unbearable and he stopped working on January 3, 2014. Dr. Paul then restricted Claimant to standing for no more than four hours. R.R. at 181a-86a.

On cross-examination, Claimant acknowledged that he did not go to the emergency room after his injury. He also agreed that he had previously treated with Dr. Morgante for temporomandibular joint (TMJ) pain and pain radiating down to his lower back prior to the work injury. Claimant insisted, however, that he had no prior back complaints or treatment for back pain. R.R. at 157a, 163a-68a, 194a. Claimant noted that he sustained work injuries in 1998, 2003, and 2009 at former places of employment, but he could not remember if he sought medical treatment for those injuries or filed any workers' compensation claims for those injuries.[5]

---

[5] Claimant testified that his prior injuries included: a buttock injury while employed by Staten Island University Hospital in 1998; a tailbone injury at Staples in 2001; a right side injury **(Footnote continued on next page…)**

Claimant presented the deposition testimony of Dr. Morgante, a board-certified chiropractor, who has treated Claimant for neck pain, mid-lower back pain, TMJ, muscle spasms, hip pain, and thoracic sprain/strain since January 2009. Prior to the April 20, 2012 work injury, Dr. Morgante had seen Claimant more than three hundred times and had repeatedly diagnosed Claimant with a lumbar segmental dysfunction, lumbar sprain/strain, and lumbar subluxation. Dr. Morgante testified that he saw Claimant on April 19, 2012, the day before the work injury, for subjective complaints of left jaw and lower back pain. R.R. at 103a, 123a-28a.

Dr. Morgante said that he treated Claimant for the work injury on August 3, 2012, at which time Claimant complained of low back and right leg pain radiating through his toes. After performing a physical examination, Dr. Morgante diagnosed Claimant with sciatica, lumbago, and a disc syndrome. Dr. Morgante stated that he had treated Claimant for back pain prior to the work injury but that sciatica was a new diagnosis. Although Dr. Morgante was aware that Claimant had fallen in his shower on February 27, 2013 and on March 6, 2013, he still attributed Claimant's symptoms to the work injury on April 20, 2012. R.R. at 91a-93a, 129a-30a, 138a.

Claimant also presented the deposition testimony of Dr. Paul, his primary care physician. Dr. Paul testified that he has been treating Claimant for high blood pressure, TMJ, anxiety, and low back problems since 2007. Dr. Paul

**(continued…)**

at Staten Island Hospital in 2003; a right knee injury at Children's Hospital in January 2009; a right ankle injury at Rivers Casino in 2009; and a buttock injury at Erie Insurance in December 2009. Claimant filed claims for his right side injury while employed at Staten Island Hospital in 2003 and his right knee injury at Children's Hospital in January 2009. R.R. at 171a-72a.

stated that he diagnosed Claimant with lumbosacral spondylosis (arthritis of the spine) in October 2009 and had prescribed Claimant medications for his back spasms and back pain since June 2009. Dr. Paul said that he saw Claimant on April 19, 2012, the day before the work injury, and diagnosed him with lumbosacral spondylosis and back sprain. R.R. at 204a-206a, 211a.

Dr. Paul began treating Claimant for the work injury on June 18, 2012. At that time, Dr. Paul found no changes to the low back and no suggestion of right leg symptomatology, and he determined that Claimant's overall diagnoses and medications remained unchanged. R.R. at 213a-18a.

Dr. Paul testified that on January 9, 2013, Claimant called him complaining of unbearable pain and asking for additional work restrictions. Although Dr. Paul was not able to perform a physical examination until January 16, 2013, he took Claimant off work based on his subjective complaints of pain and provided the additional restrictions Claimant requested. R.R. at 252a-54a.

On cross-examination, Dr. Paul acknowledged that Claimant's reports of pain, numbness, and tingling were all subjective complaints and that there were no changes in Claimant's sensory, reflex, and motor strength abilities. However, Dr. Paul believed that Claimant's subjective complaints of leg pain were related to the work injury because Claimant had no prior complaints of leg pain. R.R. at 238a, 250a, 259a.

In addition, Claimant presented the deposition testimony of Dr. Tragesser, Employer's panel physician, who first examined Claimant on April 23, 2012. Dr. Tragesser testified that Claimant completed a patient information questionnaire in which he reported low back and right shoulder pain but not leg pain. Dr. Tragesser said that Claimant noted on the form that he had a pre-existing

6

condition of TMJ, which can be associated with neck, upper back and shoulder pain. According to Dr. Tragesser, Claimant did not report any prior low back, right shoulder, or neck conditions, and he specifically denied filing any prior workers' compensation claims. Based on the history Claimant provided, Dr. Tragesser understood that Claimant had no prior low back or right shoulder injuries or symptoms prior to the work injury, R.R. at 311a-19a, and he agreed that his opinion as to causation might be different if Claimant had such problems before the work injury. R.R. at 287a, 307a-19a, 331a-38a.

At Claimant's exam on May 23, 2012, Dr. Tragesser found that while his neck, shoulder and back pain were improving, Claimant had begun to experience right lower extremity pain. He conducted an MRI, which showed disc changes at the L4-5 and L5-S1 levels, and he stated that those changes could have been caused by or worsened by Claimant's fall at work. He also acknowledged that those changes could have been caused by aging and normal wear and tear. He testified within a reasonable degree of medical certainty that Claimant's low back and leg symptoms were causally related to Claimant's work injury, stating that his opinion as to causation was based upon the accuracy of the history Claimant provided. R.R. at 286a, 294a-96a, 304a, 324a-26a.

Dr. Tragesser testified that he had not reviewed any of Dr. Morgante's or Dr. Paul's records. Dr. Tragesser then reviewed Dr. Paul's notes from an April 19, 2012 examination of Claimant, which revealed Claimant's detailed history of right hip and low back complaints. He agreed that those records were inconsistent with his understanding of Claimant's history, and he acknowledged that his opinion that Claimant's back and leg symptoms were causally related to the work

7

injury was based solely on the history Claimant provided.  R.R. at 311a-14a, 319a-20a, 328a-29a.

In defense of Claimant's petitions and in support of its termination petition, Employer offered the deposition testimony of Trenton M. Gause, M.D., a board-certified orthopedic surgeon who reviewed Claimant's medical history and performed an independent medical examination of Claimant on July 5, 2013.  Dr. Gause testified that he found no evidence of right leg radiculopathy related to the work injury.  He noted that Claimant did not complain of leg pain until several weeks after the incident.  Dr. Gause stated that Claimant's leg pain was never objectively correlated with his work injury by any physician's findings or diagnostic studies.  R.R. at 372a, 377a, 381a.

According to Dr. Gause, Claimant's numerous pre-injury evaluations by Dr. Morgante revealed an ongoing and significant prior history of low back complaints that were not aggravated in any way by the work injury.  Additionally, Dr. Gause said that his review of Dr. Paul's records confirmed that Claimant reported low back pain the day before the injury.  Dr. Gause testified that Claimant's work injury at most represented a lumbar contusion and was accepted as such.  He opined that Claimant had fully recovered from the recognized work injury by the time of his July 5, 2013 examination.  R.R. at 366a-67a, 373a, 377a.

The WCJ noted that medical records submitted to establish Claimant's history of previously reported work injuries clearly showed that Claimant had sustained prior low back injuries.  WCJ's Finding of Fact No. 8.  As to the witnesses' testimony, the WCJ accepted Dr. Gause's testimony as credible and persuasive, finding Dr. Gause's credentials as an orthopedic surgeon to be superior to those of Dr. Paul, Dr. Morgante, and Dr. Tragesser.  The WCJ also found that

8

Dr. Gause's testimony was supported by diagnostic tests and physical examinations, emphasizing that Dr. Gause was the only physician who reviewed all of Claimant's medical records.

The WCJ accepted the testimony of Dr. Morgante to the extent that he acknowledged Claimant had lower back pain prior to the injury. (WCJ's Findings of Fact Nos. 9a-f). The WCJ found that Dr. Tragesser's testimony was incompetent because Dr. Tragesser was unaware of Claimant's history of prior low back diagnoses and treatment and had relied on an inaccurate history in forming his opinions. Thus, the WCJ rejected Dr. Tragesser's testimony insofar as it conflicted with the testimony of Dr. Gause. With regard to Dr. Paul's testimony, the WCJ noted that Dr. Paul attributed Claimant's symptoms to the work injury even while acknowledging that there were no changes in Claimant's low back after the injury. The WCJ rejected Dr. Paul's testimony based on that inconsistency and also because Dr. Paul took Claimant off work and provided more restrictions via phone on January 9, 2013, without performing a physical examination. Finally, the WCJ rejected Claimant's testimony, explaining that Claimant was inconsistent and evasive regarding the filing of any prior workers' compensation claims or sustaining any prior low back injuries. (WCJ's Finding of Fact No. 9d-f).

Based on these credibility determinations, the WCJ concluded that the description of the NCP should not be expanded to include radiculopathy of the right leg. The WCJ also concluded that Claimant had not met his burden of proving that he had a worsening of his condition that resulted in lost wages or that Employer had violated the Act. (WCJ's Conclusions of Law Nos. 1- 3.) Accordingly, the WCJ denied Claimant's review, reinstatement, and penalty petitions. Additionally, based on the credible testimony of Dr. Gause, the WCJ

9

found that Claimant had fully recovered from the work injury as of July 5, 2013, and granted Employer's termination petition. Claimant appealed to the Board, which affirmed the WCJ's decision.

On appeal to this Court,[6] Claimant argues that the WCJ erred by failing to amend the NCP. Claimant first asserts that, because Employer was obligated to investigate his condition[7] and paid for Dr. Tragesser's treatment, Employer should be bound by the opinions of its panel provider. However, Claimant cites no authority to support this assertion. Moreover, Claimant disregards the fact that Dr. Tragesser's diagnoses were based in large part on the inaccurate medical history that Claimant provided him. Thus, Claimant's contention that equity compels a different result necessarily fails.

Claimant also argues that the WCJ erred in concluding that Dr. Tragesser's testimony was incompetent because he failed to review all of Claimant's medical records. However, we have repeatedly held that a medical expert's opinion is incompetent when the medical expert's opinions are based on an incomplete and inaccurate medical history. *See e.g. Southwest Airlines v. Workers' Compensation Appeal Board (King)*, 985 A.2d 280, 286-87 (Pa. Cmwlth. 2009) (testimony of a medical expert who relied on the claimant's self-serving statements and was unaware of the claimant's medical history, which included numerous prior injuries, was not competent to establish causation); *Chik-Fil-A v.*

---

[6] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. *Fortwangler v. Workers' Compensation Appeal Bd. (Quest Diagnostics)*, 113 A.3d 28 (Pa. Cmwlth. 2015).

[7] Section 406.1(a) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*. 77 P.S. §717.1(a), requires an employer to promptly investigate every reported work injury.

*Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678, 689 (Pa. Cmwlth. 2002) (testimony of a medical expert was not competent to establish causation where the expert relied on an incomplete and inaccurate medical history and testified that if the claimant's history was not as reported to him, his opinion would be different). As in those cases, Dr. Tragesser's opinion that Claimant's back and leg symptoms were causally related to the work injury was based solely on the incomplete and inaccurate history Claimant provided him. Accordingly, the WCJ correctly concluded that his opinion was not competent to establish the cause of Claimant's symptoms.[8] *Southwest Airlines; Chik-Fil-A*.

Finally, Claimant argues that the WCJ erred in relying on Dr. Gause's opinion to grant Employer's termination petition. An employer seeking to terminate benefits bears the burden of proving by substantial evidence that the claimant's disability has ceased or that any remaining conditions are unrelated to the work injury. *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer may satisfy this burden by presenting unequivocal and competent medical evidence demonstrating the claimant's full recovery from his work injury. *Id.*

Claimant first asserts that Dr. Gause's opinion that Claimant has fully recovered from the work injury is insufficient because he did not address the

---

[8] Claimant nevertheless contends that Employer is estopped from denying Dr. Tragesser's conclusions, citing *Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing and S.W.I.F.)*, 669 A.2d 1023 (Pa. Cmwlth. 1995), and *County of Schuylkill v. Workmen's Compensation Appeal Board (Lawlor)*, 617 A.2d 46 (Pa. Cmwlth. 1992). In *Kelly,* we held that an employer that made payments in lieu of compensation was estopped from denying liability for the claimant's work injury. In *Lawlor,* we held that the Board erred in setting aside an NCP where the employer failed to complete its investigation despite having an opportunity to do so. Because the facts and legal issues in those cases are distinguishable, we conclude that Claimant's reliance on those decisions is misplaced.

11

additional injuries recognized by Dr. Tragesser. Having determined that Dr. Tragesser's opinion testimony was not competent to support an amendment of the NCP, we necessarily reject this argument. Claimant also contends that Dr. Gause did not provide unequivocal testimony identifying Claimant's work injury. However, as noted above, Dr. Gause unequivocally testified that Claimant's work injury was at most a lumbar contusion and that Claimant had fully recovered from the accepted work injury as of July 5, 2013. R.R. at 366a-67a, 373a, 377a.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Wisnieski,                          :
                                           : No. 2395 C.D. 2015
                          Petitioner       :
                                           :
              v.                           :
                                           :
Workers' Compensation Appeal               :
Board (Apollo Ridge School                 :
District and Highmark Casualty             :
Insurance Company),                        :
                                           :
                          Respondents      :


O R D E R


AND NOW, this 23<u>nd</u> day of <u>August</u>, 2016, the order of the Workers'

Compensation Appeal Board, dated October 30, 2015, is affirmed.


_____
MICHAEL H. WOJCIK, Judge