J-S78024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JO ANN BUSKEY, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ROBERT E. BUSKEY, JR., DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 734 WDA 2017 |
| KUKURIN CONTRACTING, INC., A PENNSYLVANIA CORPORATION; SAKAI AMERICA MANUFACTURING, INC., A/K/A SAKAI AMERICA, INC., A GEORGIA CORPORATION AND SAKAI HEAVY INDUSTRIES, INC., A/K/A SAKAI HEAVY INDUSTRIES, LTD., A FOREIGN CORPORATION | : : : : : : : : : : | |
| APPEAL OF: FEDERATED MUTUAL INSURANCE COMPANY AND EXPORT FUEL COMPANY, INC. | : : : : | |

Appeal from the Order April 21, 2017
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  3530 of 2013

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                          **FILED JULY 10, 2018**

Appellants, Federated Mutual Insurance Company and Export Fuel Company, Inc., appeal from the April 21, 2017 Order entered in the Westmoreland County Court of Common Pleas affirming the November 18, 2016 Order approving the Petition to Compromise and Settle Wrongful Death and Survival Action, and apportioning the settlement amount.  After careful review, we affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

On August 28, 2012, an asphalt roller fatally injured Robert E. Buskey, Jr. ("Decedent") in the course of his employment at Export Fuel Company. Jo Ann Buskey, Decedent's widow ("Appellee"), filed a wrongful death and survival action against Defendants Kukurin Contracting, Inc. and Sakai America Manufacturing, Inc. The parties reached a settlement prior to trial, whereby Sakai agreed to pay Appellee $475,000, and Kukurin agreed to pay her $425,000.

Appellant, Federated Mutal Insurance Co. ("Federated"), is Appellant Export Fuel Company's workers' compensation insurance carrier. At the time the parties settled the case, Appellant Federated had paid $101,705.72 in workers' compensation death benefits to Appellee. Thus, pursuant to Section 319 of the Workers' Compensation Act (the "Act"),[1] Appellant Federated holds a subrogation lien against the economic damages portion of any settlement Appellee receives.

On November 11, 2016, Appellee filed a Petition to Compromise and Settle Wrongful Death and Survival Action seeking the trial court's permission to allocate the settlement proceeds and to make distributions to Appellee and the adult children she shared with Decedent. On November 18, 2016, the trial court granted Appellee's Petition and allocated the settlement as follows: (1) $420,000 in equal shares to each of the adult children as wrongful death damages and not subject to the worker's compensation lien; (2) $360,000 to

_____

[1] 77 P.S. § 671.

Appellee for her loss of Decedent's services, comfort, support, society, and affection, and not subject to the workers' compensation lien; and (3) $120,000 to Appellee for the loss of Decedent's financial support and subject to the worker's compensation lien.[2]  Trial Ct. Order, 11/18/16, at 1-2.

On November 28, 2016, Appellants filed a Motion for Reconsideration of the Order approving the proposed distribution, arguing that the allocation "is essentially intended and designed to eliminate or reduce the Employer's pool of subrogable monies and future credit against the balance and recovery" pursuant to the Act.  Motion, dated 11/28/16, at ¶ 6.  Appellants urged the court to reconsider its allocation of $120,000 of Appellee's settlement to economic damages when Appellee's economic-loss expert, Dr. Matthew R. Marlin, had opined that, at a minimum, Appellee had suffered $485,000 in economic damages resulting from Decedent's lost income.  *Id.* at 8.

The trial court granted Appellants' Motion for Reconsideration and held a hearing on February 2, 2017.  Appellee and her five adult children testified at the hearing.  Appellants did not present any witnesses at the hearing. The parties stipulated to the admission of Dr. Marlin's economic-loss report.

Following the hearing, on April 21, 2017, the court again granted Appellee's Petition and affirmed its November 18, 2016 Order.  This timely

---

[2] The court characterized 25% of Appellee's settlement as economic damages and 75% as non-economic damages.  100% of the settlement with Decedent's adult children represented non-economic damages.  Thus, of the total settlement amount—$900,000—only 13%, *i.e.* $120,000, constitutes subrogable economic damages.

appeal followed. Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants raise the following two issues for our review:

1. Whether the proposed allocation of the settlement proceeds to [Appellee] had a reasonable basis and was consistent with the evidentiary record offered in this matter at the February 2, 2017 hearing, wherein the [t]rial [c]ourt abused its discretion and/or committed an error of law in not applying the report of Matthew R. Marlin, Ph.D, which reflected that the Decedent's death resulted in loss of net income attributable the Decedent's death greater than the 25% settlement apportionment approved by the Order of Court dated November 18, 2016.

2. Whether the [t]rial [c]ourt, by granting Appellee's Petition for Approval to Compromise and Settle Plaintiff's Wrongful Death and survival Action erred as a matter of law and/or abused its discretion by failing to adequately apply and uphold the Superior Court ruling in **Urmann v. Rockwood Casualty Insurance Company**, 905 A.2d 513 (Pa. Super. 2006) that requires a [c]ourt to ensure the allocation of a settlement is a fair apportionment based on the facts, as distinguished from whether the apportionment was allocated not based on facts but designed to maximize [ ] recovery to the plaintiffs at the expense of a workers' compensation lien, thereby reducing the employer's future credit against future installments of a wage loss compensation due to be paid [Appellee].

Appellants' Brief at 5-6.

Although Appellants provide two issues in their Statement of Questions Involved, they fail to address them in the manner required by our rules of appellate procedure. Rather than addressing the issues specifically raised

- 4 -

above, as required by Pa.R.A.P. 2119(a),[3] Appellants provide us with a primer on an employer's right to subrogation, the Workers Compensation Act, and the difference between loss of consortium and wrongful death, before arguing that the court misapplied ***Urmann v. Rockwood Casualty Insurance Company***, 905 A.2d 513 (Pa. Super. 2006). Appellants aver that "this Court should give greater weight to the opinions of Dr. Marlin—the economic expert Appellee intended to rely on in the civil liability action—to support an allocation of at least 44% of Mrs. Buskey's total settlement toward economic damages with 56% to emotional and/or loss of household services." Appellants' Brief at 24. Appellants also assert that in allocating only 25% of Appellee's settlement to economic damages, the court "subverts the tenants [*sic*] outlined by the holding in ***Baus*** [***v. Workmen's Compensation Appeal Board (Nelson Co. et al.)***, 585 A.2d 573 (Pa. Cmwlth. 1991)]" so that the allocation "prematurely returns the burden of the payment of lost earnings to the Appellants to compensate Appellee for economic damages caused by the civil action defendants." ***Id*** at 25.[4] Distilled to its essence, Appellants'

---

[3] Rule 2119(a) requires an appellant's brief to "be divided into as many parts as there are questions to be argued[.]"

[4] Appellants fail to describe what the ***Baus*** tenets are and provide no analysis of ***Baus*** as it relates to the facts of this case. "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review … with pertinent discussion [and] references to the record[.]" ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007). This Court "will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** Issues

argument seems to be that the court did not weigh the evidence in a manner that would render an allocation of the settlement proceeds "equitable" with respect to their subrogation lien.

This Court reviews a trial court's order approving or denying a settlement agreement for an abuse of discretion. *Dauphin Deposit Bank and Trust Co. v. Hess*, 727 A.2d 1076, 1080 (Pa. 1999). However, our standard of review "is plenary as to questions of law." *Urmann*, 905 A.2d at 518 (citations omitted). "We will overturn the trial court's decision only when the court's factual findings are contrary to the weight of the evidence or when its legal conclusions are erroneous. *Id.*

In considering the allocation and apportionment of settlement proceeds, the trial court is responsible for ensuring that the allocation represents "a **fair apportionment based on the facts of the case**," and not a purposeful subversion of the right of the workers' compensation insurer to collect on its subrogation lien. *Id.* at 523 (emphasis added).

In *Urmann*, the plaintiffs' workers' compensation insurance carrier opposed the settlement of the plaintiffs' tort claim allocating over 80% of the plaintiffs' recovery to the loss of consortium claim, which would not be subject to its workers' compensation subrogation lien. Following a hearing, at which

---

not developed in the argument section of a brief are waived. *Harkins v. Calumet Realty Co.*, 614 A.2d 699, 703 (Pa. Super. 1992). Accordingly, Appellant has waived any issues reliant on directives or holdings provided in *Baus*.

the plaintiffs presented three witnesses and the carrier presented none, the trial court confirmed the settlement agreement. On appeal, this Court affirmed the trial court, holding that the apportionment of settlement funds is appropriate when it is "based on a good faith attempt to apportion the claim based on the facts, rather than on a motivation intended to, and designed to, or motivated to eliminate or reduce unconscionably, a subrogation lien." ***Urmann***, 905 A.2d at 518.

Appellants contend that because the expert report, admitted on stipulation, opined on Appellee's minimum economic damages, the trial court misapplied ***Urmann*** in affirming the apportionment of damages suggested by Appellee. ***See*** Appellants' Brief at 24. We disagree.

Our review of the record and the trial court's Opinion indicates that the court considered all of the evidence presented before concluding that "the 75/25 settlement apportionment between the wrongful death action and the survival action was based on a good faith attempt to apportion the claim based on the facts." Trial Ct. Op., 4/21/17, at 5. Like ***Urmann***, the court heard significant testimony about the non-economic damages suffered by Decedent's wife and children. As ***Urmann*** instructs, the court weighed all of the evidence, including the expert's report, which "[did] not take into account the value of [Decedent's] support, comfort, society, affection, guidance, and companionship which, in these circumstances, were significant aspects of [Decedent's] contribution to his wife and children." Trial Ct. Op., at 5. The

court concluded that the non-economic losses "far outweighed the loss of earned income occasioned by [Decedent's] death." *Id*. Our review of the record supports the conclusion that the apportionment is based on a "good faith attempt to apportion the claim based on the facts." *Urmann*, *supra* at 518. There is no evidence that the court or Appellee attempted "to eliminate or reduce unconscionably, a subrogation lien." *Id*.[5]

Following our review of the certified record and relevant case law, we conclude that the court's factual findings are supported by the weight of the evidence and its legal conclusions are correct. The Honorable Richard E. McCormick, Jr., who presided at the hearing, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellants' challenge to the apportionment of Appellee's settlement. After careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. *See* Trial Ct. Op., 4/21/17, at 3-6 (concluding that: (1) Appellee presented compelling and undisputed evidence outlining the extent to which Decedent's death had a direct and indirect economic and non-economic impact on his family; (2) the record is replete with evidence of the non-pecuniary benefits offered by Decedent to his family; (3) Dr. Marlin's figures did not take into account the value of Decedent's significant non-economic contribution to Appellee, which far

_____

[5] Likewise, contrary to Appellants' contention, there is no evidence that the trial court held "disdain for the Appellants." Appellants' Brief at 28.

outweighed the loss of his earned income; and (4) the apportionment of the settlement is based on a good faith attempt to apportion the claim based on the facts, rather than on a motivation intended to eliminate or reduce unconscionably a subrogation lien.)

The parties are instructed to attach a copy of the trial court's April 21, 2017 Opinion to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2018

Filed 6/5/2017 3:49:37 PM Superior Court Western District
734 WDA 2017

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, COMMONWEALTH OF PENNSYLVANIA

## CIVIL DIVISION

JO ANN BUSKEY, Individually and as )
Administratrix of the ESTATE OF )
ROBERT E. BUSKEY, JR., DECEASED, )
                                    )
     Plaintiffs, )
                                    )
       vs. )          No. 3530 of 2013
                                      )
KUKURIN CONTRACTING, INC., )
a Pennsylvania Corporation; SAKAI )
AMERICA MANUFACTURING, INC., a/k/a )
SAKAI AMERICA, INC., a Georgia Corporation; )
and SAKAI HEAVY INDUSTRIES, INC., )
a/k/a SAKAI HEAVY INDUSTRIES, LTD., )
a Foreign Corporation, )
                                    )
     Defendants. )

## OPINION and ORDER OF COURT

*By President Judge Richard E. McCormick, Jr.:*

This matter is before the Court on the objection of the worker's compensation lien holder, Federated Mutual Insurance Company ("Federated"), to this Court's Order dated November 18, 2016, which grants Plaintiff's *Petition to Compromise and Settle a Wrongful Death and Survival Action.* Federated's objection focuses on the proposed apportionment of settlement proceeds as between the wrongful death and survival action, arguing that allocating 25% of Mrs. Buskey's total proceeds toward economic damages and 75% to emotional damages and loss of household services is intended to eliminate or substantially reduce the employer's pool of subrogable monies and future credit against

1

the recovery available under 77 Pa.C.S. section 617 and section 319 of the Pennsylvania Workers' Compensation Act.

Federated, pursuant to its obligation under the Pennsylvania Workers' Compensation Act ("the Act"), has paid and continues to pay death benefits to the widow of the Decedent as a result of the work-related death of Robert E. Buskey, Jr., on August 28, 2012. As of the date when the parties reached a settlement in this case, Federated had paid $101,705.72 in workers' compensation benefits to Mrs. Buskey, constituting a recoverable lien pursuant to section 319 of the Act.

On November 11, 2016, the Estate of Robert Buskey filed a petition seeking this Court's permission to allocate the settlement proceeds received from the Defendants in the third party action, as well as to make distributions to the Decedent's widow and adult children under the wrongful death and survival actions. The total settlement is $900,000, with $420,000 compensating Decedent's children and $480,000 compensating Decedent's widow. Specifically, the Estate proposed, and this Court agreed, that $120,000 of Mrs. Buskey's $480,000 settlement be compensation for "loss of financial support," thereby making $120,000 subject to the employer's statutory lien. The Employer, through its insurance carrier, Federated, objects to the apportionment of the remaining 75% of the widow's allocated settlement - $360,000 - as compensation under the wrongful death action. Employer maintains that this apportionment offers a disproportionate allocation of compensation toward Mrs. Buskey's loss of comfort, support, affection and household services suffered as a result of the death of her husband, and that it unjustifiably diminishes the pool of funds available to the employer's subrogation interests.

2

The Superior Court's holding in *Urmann v. Rockwood Casualty Insurance Co.*,

905 A.2d 513 (Pa.Super. 2006), states:

> It is the responsibility of the Court to make sure that the allocation [of the settlement] ... is a fair apportionment based on the facts of the case as distinguished from whether the apportionment is allocated not based on facts but designed only to maximize the net recovery to the (Plaintiffs) at the expense of the workers' compensation subrogation lien. (*Id.* at 523.)

Accordingly, we held an evidentiary hearing on February 2, 2017, for the purpose

of taking testimony and receiving evidence on the issue of the fair apportionment of

damages.

The Plaintiffs presented compelling and undisputed evidence outlining the extent

to which the Decedent's death had a direct and indirect economic and non-economic

impact on his family. In fact, even Federated and the Employer characterized the

Plaintiffs' evidence as "detailed, heart wrenching, and compelling testimony from the

decedent's survivors regarding the substantial household services performed by Mr.

Buskey." (See *Federated Mutual Insurance Company and Export Fuel Company, Inc.'s*

*Proposed Findings of Fact and Conclusions of Law in Response to Plaintiff's Petition to*

*Compromise and Settle Wrongful Death and Survival Action,* paragraph 18.) In footnote

1 to paragraph 24, Federated continues: "The testimony offered by Mr. Buskey's adult

children clearly outline his generous assistance with home repairs, transportation

services, child care, automotive repairs, and appliance repairs. The record also reflects

ample evidence of Mr. Buskey's non-pecuniary benefits such as comfort, society,

affection and guidance." Finally, Federated concedes that "...the adult children Plaintiff

produced evidence sufficient to qualify an entitlement to recover under the Wrongful

3

Death Act and thereby preclude their settlement proceeds from being subjected to the Employer's subrogation interests."

Likewise, the Plaintiff Wife/Mother testified at length about her relationship with her husband and the impact of his death. At the time of his death, they had been married for 35 years. (February 2, 2017, Hearing Transcript, pp. 93-96, hereinafter "HT 93-96.") They raised five children together. (HT 97.) Mr. Buskey was only alive long enough to know five of his eight grandchildren. (HT 97.) The loss of her husband had an impact on Mrs. Buskey in every way, both physically and emotionally. (HT 101-102.) On that topic, she said: "...[H]e was the kind of person that no matter what you were doing, he dropped everything ... to help you with anything, I don't care what it was. He would drop what he was doing to help me." (HT 101.) He built up her confidence and helped her make decisions, as she candidly confessed that she is unsure of herself. He taught her. (HT 102.) He was capable of maintaining their property and home in ways that she is unable to do herself. (HT 102.) As a further consequence, she is depressed a lot, and feels inadequate. She gives her children emotional support, but feels like she "can't be that grand person that he was." (HT 107.) He was the kind of companion who made her tea and ran her bath for her when she came home after a long day at work. (HT 116.) She described them as "a team." (HT 117.) As Mrs. Buskey enters her senior years, she is without the daily support, comfort, society, affection, guidance, and companionship of a man she depended upon for a significant portion of her life. In other words, the loss of Robert Buskey in Jo Ann Buskey's life is significant.

The parties agreed to the admission of a Report entitled "The Economic Loss Resulting From the Death of Robert Buskey," dated July 3, 2014, and prepared by

4

Matthew R. Marlin, Ph.D., Professor of Economics at Duquesne University, Pittsburgh, PA. Dr. Marlin calculated that Mr. Buskey's death resulted in a net income loss of $377,628, and that Mrs. Buskey's loss of future household services was worth $481,072. In other words, 44% of the combined loss of $858,700 is attributable to the net income loss and 56% is attributable to the loss of household services.

Federated relies upon Dr. Marlin's percentage allocation (44/56) as a basis to argue that the ratio of economic to non-economic loss should be 50/50. We believe this reasoning is flawed. Dr. Marlin's figures do not take into account the value of Mr. Buskey's support, comfort, society, affection, guidance, and companionship, which, in these circumstances, were significant aspects of Mr. Buskey's contribution to his wife and children. Although we will not attempt to quantify that loss as an exact percentage, we do find, based upon the uncontroverted and overwhelming testimony that was presented, that a significant part of Mrs. Buskey's loss was for non-economic losses and loss of household services, and that comparatively speaking, these losses far outweighed the loss of earned income occasioned by Mr. Buskey's death. As the court in *Spangler v. Helm's New York-Pittsburgh Motor Exp.*, 153 A.2d 490, 492 (Pa. 1959), so colorfully said, " The fact that there is no mathematical formula whereby compassionately bestowed benefits can be converted into a precise number of bank notes does not mean that the tortfeasor will be excused from making suitable reimbursement for their loss."

Based upon the foregoing, we find the 75/25 settlement apportionment between the wrongful death action and the survival action is based on a good faith attempt to apportion the claim based on the facts, rather than on a motivation intended to eliminate

5

or reduce unconscionably a subrogation lien. Accordingly, we affirm the Settlement

Petition and Order of Court dated November 18, 2016, as proposed.

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, COMMONWEALTH OF PENNSYLVANIA

## CIVIL DIVISION

JO ANN BUSKEY, Individually and as
Administratrix of the ESTATE OF
ROBERT E. BUSKEY, JR., DECEASED,

    Plaintiffs,

vs.

KUKURIN CONTRACTING, INC.,
a Pennsylvania Corporation; SAKAI
AMERICA MANUFACTURING, INC., a/k/a
SAKAI AMERICA, INC., a Georgia Corporation;
and SAKAI HEAVY INDUSTRIES, INC.,
a/k/a SAKAI HEAVY INDUSTRIES, LTD.,
a Foreign Corporation,

    Defendants.

No. 3530 of 2013

## ORDER OF COURT

AND NOW, to wit, this $\underline{21}$ day of April, 2017, after a hearing on Federated

Mutual Insurance Company's and Export Fuel Company Inc.'s *Motion for*

*Reconsideration* of our ruling on their objection to Plaintiff's *Petition to Compromise and*

*Settle Wrongful Death and Survival Action*, and based upon the rationale contained in the

foregoing Opinion, it is hereby **ORDERED** and **DECREED** that the *Petition to*

*Compromise and Settle Wrongful Death and Survival Action* and Order of Court dated

November 18, 2016, are **AFFIRMED** and the relief requested in Federated Mutual

Insurance Company's and Export Fuel Company Inc.'s *Motion* is **DENIED.**

FURTHER, in accord with Pa.R.C.P. No. 236(a)(2) and (b), the Prothonotary is

7

**DIRECTED** to note in the docket that the individual(s) listed below have been given

notice of this Order.

BY THE COURT:

_____
RICHARD E. McCORMICK, JR.,
PRESIDENT JUDGE

ATTEST:

_____
Prothonotary

cc:    Jeffrey T. Strittmatter, Esq. – for Federated Mutual & Export Fuel ✓
       Bernard P. Matthews, Esq., Thomas Pellis, Esq., & Shane Sarver, Esq. –
           for the Plaintiffs
       Terry L.M. Bashline, Esq. – for the Defendant Kukurin
       William J. Ricci, Esq., Frank Burns, Esq. – for the Defendants Sakai America and
           Sakai Japan
       Leslie Mlakar, Esq. – for the Plaintiff

8